No. 25-1241

(Judge Tapp)

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ANDREA DANZIGER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

### DEFENDANT'S MOTION TO DISMISS

BRETT A. SHUMATE
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL
Rachel B. Cochran
Assistant General Counsel
U.S. Agency for Int'l Development

STEPHANIE A. FLEMING
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0170
Facsimile: (202) 305-2062
Stephanie.Fleming@usdoj.gov

*Attorneys for Defendant*

Dated: September 30, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

BACKGROUND .................................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

I.    Ms. Danziger's Complaint Fails to Allege a Claim For Which Relief Can Be Granted ................................................................................................................ 5

    A.  Standard of Review ................................................................................... 5

    B.  Ms. Danziger Fails to Sufficiently Allege "Bad Faith" or "Abuse of Discretion" in the Termination of Her Contract. (Count I) ............................................... 5

    C.  Ms. Danziger Does Not Sufficiently Allege That the Government Breached the Termination Clause of Her Contract, as She Admits Costs Which Are Due Under That Clause Have Been Paid. (Count II) ........................................ 9

    D.  Ms. Danziger Failed to Sufficiently Allege a Class Action or That She Is "Similarly Situated" to All Other PSC Contractors .................................... 13

CONCLUSION ..................................................................................................................... 15

## TABLE OF AUTHORITIES

<u>Cases</u>

*Acceptance Ins. Cos., Inc. v. United States*,
   583 F.3d 849 (Fed. Cir. 2009) .................................................................................................. 5

*Am-Pro Protective Agency, Inc. v. United States*,
   281 F.3d 1234 (Fed. Cir. 2002) ................................................................................................ 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................ 5, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................................. 5

*Bell v. United States*,
   123 Fed. Cl. 390 (2015) ......................................................................................................... 13

*Caldwell & Santmyer, Inc. v. Glickman*,
   55 F.3d 1578 (Fed. Cir. 1995) ............................................................................................. 5, 6

*Christian v. United States*,
   46 Fed. Cl. 793 (2000) ........................................................................................................... 14

*Coastal Corp. v. United States*,
   6 Cl. Ct. 337 (1984) ................................................................................................................. 8

*Cooke v. United States*,
   1 Cl. Ct. 695 (1983) ............................................................................................................... 14

*CPS Mech. Contractors, Inc. v. United States*,
   59 Fed. Cl. 760 (2004) ........................................................................................................... 12

*Gadsden v. United States*,
   78 F. Supp. 126 (1948) ............................................................................................................ 6

*John Reiner & Co. v. United States*,
   325 F.2d 438, 163 Ct. Cl. 381 (1963) .................................................................................. 6, 9

*Kalvar Corp., Inc. v. United States*,
   211 Ct. Cl. 192, 543 F.2d 1298 (1976) ................................................................................ 6, 9

*Keco Indus., Inc. v. United States*,
   492 F.2d 1200 (1974) ............................................................................................................... 9

*Krygoski Constr. Co., Inc. v. United States*,
   94 F.3d 1537 (Fed. Cir. 1996) ............................................................................................. 6, 9

*Librach v. United States*,
    147 Ct. Cl. 605, 1959 WL 7633 (1959) ................................................................... 6, 9

*McDonnell Douglas Corp. v. United States,*,
    182 F.3d 1319 (Fed. Cir. 1999) ................................................................................... 8

*Modeer v. United States*,
    68 Fed. Cl. 131 (2005) .............................................................................................. 12

*Northrop Grumman Corp. v. United States*,
    46 Fed. Cl. 622 (2000) ................................................................................................ 8

*Road & Highway Builders, LLC v. United States*,
    702 F.3d 1365 (Fed. Cir. 2012) ............................................................................... 5, 6

*Robert F. Simmons & Assocs. v. United States*,
    175 Ct. Cl. 510 (1966) ................................................................................................ 8

*Salsbury Indus. v. United States*,
    905 F.2d 1518 (Fed. Cir. 1990) ................................................................................... 6

*Sommers Oil Co. v. United States*,
    241 F.3d 1375 (Fed. Cir. 2001) ................................................................................... 5

*Torncello v. United States*,
    231 Ct. Cl. 20, 681 F.2d 756 (1982) ........................................................................ 5, 6

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................................................. 13

Statutes

41 U.S.C. § 601 et seq ....................................................................................................... 12

Rules

RCFC 12(b)(6) ..................................................................................................................... 5

RCFC 23(a) ....................................................................................................................... 13

RCFC 23(b) ................................................................................................................. 13, 14

Regulations

48 C.F.R. § 52.233–1(c) .................................................................................................... 12

FAR 52.233-1 .................................................................................................................... 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ANDREA DANZIGER,<br><br>       Plaintiff,<br><br> v.<br><br>THE UNITED STATES,<br><br>       Defendant. | No. 25-1241<br>(Judge Tapp) |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiff, Andrea Danziger, on behalf of herself and similarly situated plaintiffs, for failure to state a claim upon which relief may be granted. Ms. Danziger failed to sufficiently allege a claim of "bad faith" in the termination for convenience of her personal services contract for the United States Agency for International Development (USAID) because she has failed to allege any personal animus or intent to injure by the contracting officer who terminated her contract or the agency official under whose policy guidance that decision was made. Likewise, she has failed to allege a breach of the termination for convenience clause because her complaint makes clear that all costs due to her under that clause have been paid and, accordingly, there are no damages that this Court could award. Thus, we move to dismiss Ms. Danziger's Complaint, ECF No. 1 (Compl.). In the alternative, to the extent that the Court determines that a motion to dismiss some or all of the allegations in this Complaint is not warranted, we would respectfully

1

request that the Court grant the Government an additional 14 days within which to respond to plaintiff's complaint.

## BACKGROUND

Ms. Danziger is a former contractor for the United States Agency for International Development (USAID), who was contracted under a Personal Services Contract (PSC) to provide humanitarian assistance for overseas locations. Beginning in early February 2025, leadership at USAID announced they would review the operations of USAID in order to better align its work with new policy goals. *See* Compl. Ex. C at 2-3 (¶¶ 5-6) (Decl. Jeremy Lewin). This review included personnel actions and contract award review, and eventually included the staggered terminations of certain PSC contracts over the course of three months. Compl. at 2. The agency ultimately terminated PSCs in high-income and medium income countries that did not meet certain criteria, because "USAID's mandate is to assist primarily in low-income countries" and providing assistance in higher-income countries "diverts resources away from helping people progress beyond the need for aid." Compl. Ex. D at 3-4 (Action Memo for Secretary of State Rubio, February 2, 2025).

On February 19, 2025, Ms. Danziger, who was providing humanitarian support for Syria under a PSC, received a notice of the termination for convenience of her contract. Compl. at 7 (¶ 13). Ms. Danziger's contract, which was awarded on November 19, 2023, would have run through November 18, 2028, absent termination. Compl. at 7 (¶ 13). The termination notice provided that "termination will be 15 days from the date of this notification," and identified Ms. Danziger's last day of work as March 6, 2025. Compl. Ex. A (¶ 2). The notice was signed by a Supervisory Contracting Officer. *Id.* Ms. Danziger requested additional information about this notice, raised concerns about it, requested compensation, and asked for an extension of her

2

termination date.  *See* Compl. at 8 (¶ 18).  USAID issued a revised notice on March 6, 2025, extending Ms. Danziger's termination date to April 20, 2025.  Compl. at 8 (¶ 19).

The termination for convenience provision in Ms. Danziger's contract provided:

(16)(a) The Government may terminate performance of work under this contract in whole or, from time to time, in part:
…
(2) For the convenience of USAID, by giving not less than 15 calendar days advance written notice to the contractor. Upon such a termination [for convenience], contractor's right to compensation shall cease when the period specified in such notice expires except that the contractor shall be entitled to any unused vacation leave, return transportation costs and travel allowances and transportation of unaccompanied baggage costs at the rate specified in the contract and subject to the limitations which apply to authorized travel status.

APPX-41 (¶16) (Danziger Contract No. 720BHA24500007) (Ex. A); Compl. at 7 (¶14).

On April 15, 2025, Ms. Danziger submitted a certified claim, seeking termination costs in the amount of $660,961.63, which included $18,553.73 in "[u]nused leave," $1,529.90 in "[o]ther costs" that were "already submitted for Government review and approval via Public Vouchers," and $640,878 in "[l]ost [c]ompensation."  APPX-59-60 (Danziger April 15, 2025 Certified Claim) (Ex. B).  Ms. Danziger's "[u]nused leave" calculation included both annual leave accrued, which she valued at $14,667.89, and sick leave accrued, which she valued at $3,887.25.  *See* Ex. B at APPX-59-60.  Ms. Danziger also "reserve[d] the right to supplement" her claim because she "expect[ed] to incur relocation costs as a result of the termination."  Ex. B at APPX-60.  Ms. Danziger provided no information about the basis for such "relocation" costs or any quantum by which such costs could be calculated.  *Id.*

In response to Ms. Danziger's claim, the agency issued two payments.  On May 16, 2025, Ms. Danziger was paid $1,529.90, the full amount of the "other costs" her claim included. APPX-62 (Payment Transaction Record) (Ex. C); *see also* Compl. at 8 (¶ 21) (acknowledging that Ms. Danziger "received payment of her outstanding Standard Form ("SF") 1034, the Public

3

Voucher for Purchases and Services Other Than Personal, that was pending at the time of termination.")  On June 5, 2025, Ms. Danziger was paid for her annual leave, which the agency valued at $15,789.98.  Ex. C at APPX-62; *see also* Compl. at 8 (¶ 21) (acknowledging that Ms. Danziger "received a lump sum payment reflecting only her annual-leave costs").  Ms. Danziger was not paid for "lost compensation" or "relocation."

In a two-count complaint, Ms. Danziger alleges that the agency terminated PSC contracts "in abuse of discretion and bad faith" because they "unlawful[ly] dismantle[ed] a Congressionally-established independent agency" under pretext while "exhibiting animus and malice toward the PSC contractors that served USAID."  Compl. at 25 (¶ 91) (Count I).  In the alternative, Ms. Danziger alleges that the Government breached her PSC contract by failing to pay termination costs she was owed.  Compl. at 26 (¶¶ 95-96).  Further, Ms. Danziger proposes to represent all "similarly situated" PSC contractors who received USAID termination notices between February 12, 2025, and April 24, 2025, though no other plaintiffs are named in the complaint.  *See* Compl. at 5-9 (¶¶ 5-12).

As we demonstrate below, Ms. Danziger has failed to sufficiently allege a breach of contract claim, either for termination of her contract in bad faith, or failure to pay costs required under the termination for convenience clause in her contract.  Moreover, Ms. Danziger has not sufficiently pled that other PSCs terminated are similarly situated, so a class action is not warranted.   Accordingly, we respectfully ask that this Court dismiss Ms. Danziger's complaint.

4

# ARGUMENT

**I.    Ms. Danziger's Complaint Fails to Allege a Claim For Which Relief Can be Granted.**

    **A.  Standard of Review**

Pursuant to RCFC 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted" unless it alleges facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  In assessing the complaint, the Court "must accept as true all factual allegations, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted).  But the Court is not required to accept legal conclusions couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

    **B.  Ms. Danziger Fails to Sufficiently Allege "Bad Faith" or "Abuse of Discretion" in the Termination of Her Contract.  (Count I)**

Ms. Danziger fails to sufficiently allege that the termination of her contract was motivated by bad faith or was the result of an abuse of discretion, and instead invites this Court to weigh into the motivations of political decisions reached by the executive branch about the organization and priorities of USAID.  *See generally*, Compl. at 13-20 (¶¶43-66).  This Court should decline that invitation.

First, in order to demonstrate bad faith, plaintiffs must present "'well-nigh irrefragable proof'" that the government had a specific intent to injure the plaintiff.  *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed. Cir. 1995) (quoting *Torncello v. United States*, 231 Ct. Cl. 20, 45, 681 F.2d 756 (1982)); *accord Road and Highway Builders, LLC v. United States*,

5

702 F.3d 1365, 1368-69 (Fed. Cir. 2012) (requiring clear and convincing evidence of a specific intent to injure the plaintiff).  This is because we assume the government acts in good faith when contracting.  *Torncello*, 681 F.2d at 770; *Kalvar Corporation, Inc. v. United States*, 211 Ct.Cl. 192, 543 F.2d 1298 (1976); *Librach v. United States*, 147 Ct.Cl. 605, 1959 WL 7633 (1959).  Indeed, "[i]t is not the province of the courts to decide de novo whether termination was the best course; instead, "the contracting officer's election to terminate is conclusive" absent bad faith.  *Salsbury Indus. v. United States*, 905 F.2d 1518, 1521 (Fed. Cir. 1990) (quoting *John Reiner & Co. v. United States*, 325 F.2d 438, 442, 163 Ct.Cl. 381 (1963)).

The Federal Circuit has described the contractor's burden in proving bad faith is "weighty." *Krygoski Constr. Co., Inc. v. United States*, 94 F.3d 1537, 1541 (Fed. Cir. 1996).  Contractors rarely have succeeded in meeting that high burden.  *Kalvar*, 543 F.2d at 1301 (citations omitted).  Allegations of bad faith must evince a "specific intent to injure" and "animus" toward the opposing party in terminating the contract.  *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002) (quoting *Kalvar Corp. v. United States*, 211 Ct. Cl. 192, 199, 543 F.2d 1298 (1976)); *Gadsden v. United States*, 78 F.Supp. 126, 127 (1948) (finding bad faith when actions are "motivated alone by malice.").  Rarely, courts have also sustained allegations of bad faith when the Government terminated for convenience in order to "escape a promise [the Government] never had an intention to keep." *Krygoski Constr.*, 94 F.3d at 1541-42 (citing *Torncello*, 681 F.2d at 772).  But in such cases, the plaintiff must establish that the government knew it would not honor the contract at the time of formation.  *See Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1582 (Fed. Cir. 1995) (citing *Salsbury Indus. v. United States*, 905 F.2d 1518, 1521 (Fed. Cir. 1990)).

6

Ms. Danziger has neither alleged that the contracting officer terminating her contract did so with a specific intention to injure her, nor has she alleged that the agency did not intend to honor her contract at the time it was issued. Rather, she relies on allegations that various members of the Government made public statements casting aspersions on the agency for which she worked, claiming that USAID was "corrupt" and "wasting taxpayer dollars," among other statements. *See* Compl. at 23 (¶ 81), *see e.g.*, Compl. at 17 (¶¶ 58, 59). She then makes the leap that "[b]ased on the nature of the PSC contractors' work *and the closeness in time of these Government statements to the termination of Plaintiffs' contracts*" they demonstrate animus or malice in the execution of those terminations. Compl. at 23 (¶ 81) (emphasis added). But while Ms. Danziger identifies some harsh statements made about USAID, none of the statements she references were made by the individuals who ultimately made the decision to terminate her contract. Rather, she alleges the "[d]ecision to terminate certain USAID personal service contractors," was approved by Peter Marocco, Deputy Administrator of USAID, and executed by Supervisory Contracting Officer Ousay Wahaj. *See* Compl. Ex. D at 2 (February 2, 2025 email from Peter Marocco directing the termination of certain PSC contracts), Compl. Ex. A (February 19, 2025 Letter of Termination for Convenience). She does not allege that any statements by either Mr. Marocco or Mr. Wahaj suggest a personal animus or specific intent to injure her or even PSC contractors generally.

Moreover, while Ms. Dazinger characterizes the agency decision-maker's stated rationale for these terminations as "post hoc," and "pretextual," neither characterization is consistently pled. *See* Compl. at 23 (¶78). Rather, the February 2, 2025 email and memorandum directing the termination of certain PSC contracts, which Ms. Dazinger appends to her complaint, *precedes* her termination letter. Compl. Ex. D, Compl. Ex. A. In that memorandum, the agency

7

explained that it intended to terminate "personal services contract[s]" that provide service in "high-income and medium-income countries" that do not meet certain thresholds because USAID had determined that it should instead focus its resources on "assist[ing] primarily in low-income countries."  Compl. Ex. D at 3.  Ms. Danziger suggests that this goal reflected a "fundamental misunderstanding of USAID operations," Compl. at 21 (¶¶ 69, 70), but even if that allegation were true, "misunderstanding" is not sufficient to demonstrate "bad faith."

Further, even if the Court were to accept Ms. Danziger's argument that decisions of the executive branch to reorganize or dismantle USAID were themselves taken in bad faith, that would not translate to bad faith on the part of the contracting officer in terminating Ms. Danziger's contract.  Both the Federal Circuit and this court have in the past recognized a difference between a general decision about the fate of a particular program or agency, and the specific contracting officer's decision to terminate a contract.  *E.g., McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1328-29 (Fed. Cir. 1999) (distinguishing Secretary of Defense's decision not to award extraordinary relief from contracting officer's termination decision).  For instance, in the late nineties, NASA reorganized its Space Station Program, which had the necessary effect of requiring the agency to revisit the contracts which supported that Program.  But in that case "NASA was not seeking "simply" to remove plaintiff from this program and to replace it" with a competitor in bad faith; instead, "the entire Program was being scaled down." *Northrop Grumman Corp. v. United States*, 46 Fed. Cl. 622, 627-628 (2000); *see also Robert F. Simmons & Associates v. United States*, 175 Ct. Cl. 510, 516 (1966) (no bad faith in a GSA decision declining to consider the merits of a particular bid, when all bids were cancelled following a change in appropriations for the agency); *Coastal Corp. v. United States*, 6 Cl. Ct. 337, 383-84 (no bad faith or abuse of discretion in a DOE decision to reject all bids in favor of

government facilities in response to changed foreign policy objectives).  The termination for convenience of Grumman's contract was a consequence of a change in a government program, but the Court recognized that there was "no evidence that NASA had reason to treat Grumman differently from anyone else." *Id.*  So too is the case here.  Ms. Danziger's termination was the result of the reorganization of USAID, but her contract was not treated any differently than the other personal service contracts that fell within the change in policy.

Second, while the plaintiff alludes to "abuse of discretion" as an alternative to "bad faith" termination here, there is no clear legal test for abuse of discretion without a finding of bad faith. Rather, "many of [Court of Federal Claims] prior decisions seem implicitly to accept the equivalence of bad faith, abuse of discretion, and gross error." *Kalvar*, 543 F.2d at 1301, n1. Indeed, the Federal Circuit has also appeared to recognize that "the procurement official's bad faith" is one of the standards for finding that abuse of discretion is present. *See Krygoski Const.*, 94 F.3d at 1543 (quoting *John Reiner*, 325 F.2d at 442, and referencing the *Keco* standards, *Keco Indus., Inc. v. United States*, 492 F.2d 1200, 1203-1204 (Ct. Cl. 1974)).  Critically, in this case, Ms. Danziger has not actually alleged that the procurement official who terminated her PSC contract was acting in bad faith.  She cites no statement from the contracting officer to suggest animus or pretext, and so she is far short of meeting her burden to plead abuse of discretion.

### C. Ms. Danziger Does Not Sufficiently Allege That the Government Breached the Termination Clause of Her Contract, as She Admits Costs Which Are Due Under That Clause Have Been Paid.  (Count II)

Ms. Danziger alleges that the Government breached the termination for convenience clause of her contract, which required the payment of "various termination costs including unused leave costs, relocation costs, travel allowances, material/equipment costs, and other outstanding reimbursements." Compl. at 25 (¶95),  Compl. at 7 (¶ 15).  Ms. Danziger is

9

mistaken about the costs due under her contract, but to the extent she identifies costs for which she is entitled to compensation, she admits such costs have already been paid by the Government.

The plain language of Ms. Danziger's contract limits the categories of compensation for which she is entitled following Termination for Convenience. Specifically, her contract provides the following guidance about costs due:

> Upon such a termination [for convenience], contractor's right to compensation shall cease when the period specified in such notice expires except that the contractor shall be entitled to any unused vacation leave, return transportation costs and travel allowances and transportation of unaccompanied baggage costs at the rate specified in the contract and subject to the limitations which apply to authorized travel status.

Ex. A at APPX-41 (¶16(a)(2)); Compl. at 7 (¶14). First, this provision requires that the Government pay Ms. Danziger for unused vacation leave. But Ms. Danziger agreed that she "received a lump sum payment reflecting only her annual-leave costs" on June 5, 2025. Compl. at 8 (¶ 21). She does not dispute that the full value of her vacation leave was paid on that date. Indeed, in her certified claim, Ms. Danziger stated that her claim included accrued annual leave in the amount of 283 hours which she valued at an effective hourly pay rate of $51.83. Ex. B (April 15, 2025 Certified Claim). Applying that calculation, she valued her annual leave at $14,667.89, but the Government paid out annual leave in the amount of $15,789.98 on June 5, 2025. Ex. C at APPX-62 (Payment Transaction Record). To the extent that Ms. Danziger's claim and her complaint seek payment for her sick leave balance, the plain language in the termination clause only requires the payment of unused *vacation* leave, and the contract otherwise confirms that "[t]he contractor will not be compensated for unused sick leave at the

completion of this contract," Ex. A at APPX-25 (¶(4)(b)), so no further leave payment is warranted.

Second, Ms. Danziger claims that she was not paid for "outstanding compensation and reimbursements." Compl. at 8 (¶ 18). While she failed to describe these costs in her complaint or allege a contract provision that required payment of such costs, her certified claim alleged health insurance reimbursables, professional liability insurance and Arabic language training costs "were submitted for Government review and approval via Public Vouchers for Purchases and Services Other Than Personal (SF 1034s) that remain outstanding," in the amount of $1,529.90. Ex. B at APPX-60, APPX-59. But again Ms. Danziger's pleading confirms that she "also received payment of her outstanding Standard Form ("SF") 1034, the Public Voucher for Purchases and Services Other Than Personal, that was pending at the time of termination." Compl. at 8 (¶ 21). We can also confirm that Ms. Danziger was paid on May 16, 2025, for such reimbursements, which totaled $1,529.90. Ex. C at APPX-62 (Payment Transaction Record).

Third, Ms. Dazinger alleges that she was due "relocation" costs. Compl. at 8 (¶ 20), Compl. at 26 (¶95). The termination for convenience clause does not require reimbursement for "relocation" cost but, rather, "*return* transportation costs and travel allowances and transportation of unaccompanied baggage costs" which are conditioned on "limitations which apply to authorized travel status." Ex. A at APPX-41 (¶16(a)(2)); *see also* Compl. at 7 (¶14). The contract further confirms that the contractor may be reimbursed for travel expenses "incurred under the performance of this contract," as well as international travel costs "from a place of residence in the United States . . . to the post of duty in the Cooperating Country and return to a place of residence in the United States." Ex. A at APPX-34 (¶ 10 (a)(2), (c)). Ms. Danziger's contract designates her official worksite as Washington D.C. Ex. A at APPX-12

11

(Article II). Ms. Danziger admits that she was "based in the United States" for the performance of her work under this contract, identifies no travel costs that were pending reimbursement at the time of her termination, and does not allege she was on travel or located in a Cooperating Country when she was terminated. *See* Compl. at 12 (¶38). In her certified claim, Ms. Danziger explains only that she, prospectively, "expects to incur relocation costs as a result of the termination," but provides no basis for such a claim. Ex. B at APPX-60.

Moreover, Ms. Danziger's contract requires that the claim submitted must include a written demand for "the payment of a money in a sum certain," Ex. A at APPX-54 (incorporating FAR 52.233-1 (c)), but Ms. Danziger's statement that she "expects to" incur future relocation costs does not provide the agency notice of the basis for or the amount of her claim. *See* Contract Disputes Act of 1978, § 2 et seq., 41 U.S.C.A. § 601 et seq.; 48 C.F.R. § 52.233–1(c); *see also CPS Mech. Contractors, Inc. v. United States*, 59 Fed. Cl. 760 (2004) (rejecting claim where the contractor failed to identify a dollar figure or documentation that could be used to calculate a dollar figure); *Modeer v. United States*, 68 Fed. Cl. 131 (2005), *affirmed* 183 F.App'x 975, 2006 WL 1582178 (Fed. Cir. 2006) (the "sum certain" requirement for a claim is met when the contracting officer can determine the amount claimed by a simple mathematical calculation). Accordingly, Ms. Danziger has not sufficiently alleged any entitlement to "relocation" or "return transportation costs."

Finally, Ms. Dazinger seeks to be paid the full balance of the remaining years of work on her contract as "lost compensation." Compl. at 3. She does not support that claim with any allegation that the contract required such payment. To the contrary, the contract expressly states that the "contractor's right to compensation shall cease when the period specified in such [termination] notice expires . . ." and excepts from that guidance only the costs already examined

12

above.  Ex. A at APPX-41 (¶ 16(1)(2)).  Ms. Danziger appears to argue that payment for work not performed under the contract is warranted because the Government terminated her contract in bad faith.  She is mistaken.  In sum, Ms. Danziger alleges no basis for entitlement to costs other than those for which she has already been paid.

### D. Ms. Danziger has Failed to Sufficiently Allege a Class Action or That She Is "Similarly Situated" to All Other PSC Contractors

Ms. Danziger alleges that she represents a class of PSCs "performing work for USAID" whose contracts were terminated between February 12, 2025, and April 24, 2025.  Compl. at 5 (¶5).  This sweeping definition does not sufficiently allege a class action under the Rules of the Court of Federal Claims (RCFC) 23(a) or 23(b).  As a prerequisite to establishing a class action, the rules require and the plaintiff must allege that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a).  Ultimately, the plaintiff must also show that "the United States has acted or refused to act on grounds generally applicable to the class," and "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  RCFC 23(b)(2)-(3).  But the Court is not required to accept legal conclusions couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. at 678 (citation omitted).  The party seeking certification bears the burden of establishing that the requirements

of RCFC 23 have been met by a preponderance of the evidence. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *see also Bell v. United States*, 123 Fed. Cl. 390, 395 (2015). "Class certification is at the discretion of the trial court." *Bell*, 123 Fed. Cl. at 395 (collecting cases).

      Ms. Danziger has not made allegations sufficient to meet this burden. Ms. Danziger seeks to represent all PSCs "performing work" for USAID, no matter what the nature of their work might have been. Differences such as the duties of the PSC, GS level, years of service, compensation, the location served by the PSC, the location at which the PSC was stationed, the types of costs that may be reimbursed, the potential costs for family members, differentials or allowances due, the calculation of leave, and travel costs may differ widely among PSCs. *See, generally*, Ex. A (the detailed terms in Ms. Danziger's contract); *see* Compl. at 11 (¶ 34 and 38) (acknowledging many PSCs are stationed overseas, though Ms. Danziger was not). Indeed, Ms. Danziger's contract began in 2023, but other PSCs may have quite different contract terms beginning at different periods. Courts have declined to certify a class when potential class members have different fact issues affecting damages. *See, e.g., Cooke v. United States*, 1 Cl. Ct. 695, 699 (1983) (denying class certification because dissimilar factual issues regarding damages failed to meet the typicality requirement); *Christian v. United States*, 46 Fed. Cl. 793, 816 (2000) (partially denying class certification because plaintiff's claims turned in part upon particular career field and skill, and, therefore, typicality criteria was not met).

      Further, Ms. Danziger admits that PSC contracts were not terminated in one tranche, but over a period of months, potentially for different reasons, which is significant considering that Ms. Danziger argues that the "closeness in time" between statements made by various Government actors about USAID and the termination decisions is the linchpin of her legal

argument. *See* Compl. at 23 (¶ 81). She acknowledges that the termination notices issued for PSCs differed in their characterization of the basis for termination (which Ms. Danziger calls "updated boilerplate language"). *See* Compl. at 22 (¶ 73). She also alleges that termination notices were issued by different contracting officers, and suggests "many" – though not all – were "not issued by the cognizant COs who were responsible for administering and had authority over the respective contracts." *Id.* at ¶ 74. All of these differences suggest factual and legal issues that may develop differently across differently-situated PSCs, and cannot be overcome by the largely conclusory allegations with which Ms. Danziger seeks to allege class action status.

Finally, the plaintiffs fail to allege that "the United States has acted or refused to act on grounds generally applicable to the class." RCFC 23(b)(2). In this case, Ms. Danziger failed to sufficiently allege bad faith or abuse of discretion, and she has also failed to allege costs due under the termination for convenience clause were not paid under some commonly-applied Government policy. Lacking such allegations, there is no Government harm for which Ms. Danziger has alleged that a group of PSCs may seek relief, and so she has failed to allege a class.

## CONCLUSION

For the foregoing reasons, we respectfully request that our motion to dismiss be granted, and that Ms. Danziger's complaint be dismissed for failure to state a claim on which relief may be granted. To the extent that the Court determines that a motion to dismiss this Complaint is not warranted for all allegations, we would respectfully request that the Court grant the Government an additional 14 days to respond to the plaintiff's complaint.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRETT A. SHUMATE<br>Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | /s/ Martin F. Hockey, Jr.<br>MARTIN F. HOCKEY, JR.<br>Deputy Director |
| OF COUNSEL<br>Rachel B. Cochran<br>Assistant General Counsel<br>U.S. Agency for Int'l Development | /s/ Stephanie A. Fleming<br>STEPHANIE A. FLEMING<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 616-0170<br>Facsimile: (202) 305-2062<br>Stephanie.Fleming@usdoj.gov |
|  | *Attorneys for Defendant* |

Dated: September 30, 2025