**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ANDREA DANZIGER, DEBORAH MURPHY, MARK HERZBERG, KENNETH SKLAW, individually, and on behalf of all others similarly situated, | Case No. 25-1241 (Judge Tapp) |
| *Plaintiffs*, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| *Defendant*. | |

**PLAINTIFFS' OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS**

Stephen J. McBrady

***Of Counsel:***
Charles Baek
Sharmistha Das
Kenneth Dintzer
Eric Herendeen

Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500
SMcBrady@Crowell.com

Joshua Sohn

Crowell & Moring LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001

***Attorney for Plaintiffs***

Dated: January 6, 2026

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION .......................................................................................................... 1

BACKGROUND ............................................................................................................. 3

ARGUMENT .................................................................................................................. 6

I.      The Government Urges the Court to Apply Heightened and Incorrect
        Pleading Standards to Plaintiffs' Amended Complaint ...................................... 6

II.     Plaintiffs Have Properly Pleaded That the Government Breached the PSCs
        by Terminating Them in Bad Faith .................................................................... 9

        A.      The Government Incorrectly Suggests that "Specific Intent to
                Injure the Plaintiff" by Each Contracting Officer Is the Only Way
                to Show Bad Faith ................................................................................. 10

        B.      Plaintiffs Have Properly Pleaded Bad Faith Under the Correct
                Standard ............................................................................................... 12

        C.      The Government's Argument That the Terminations Resulted from
                "Programmatic" Choices Underscores That Dismissal is Not
                Warranted ............................................................................................ 14

III.    Plaintiffs Have Properly Pleaded That the Government Abused Its
        Discretion When It Terminated the PSCs ....................................................... 14

        A.      The Government Incorrectly Argues There is No Articulated
                Standard for Establishing Abuse of Discretion Without Also
                Establishing Bad Faith ......................................................................... 15

        B.      Plaintiffs Have Properly Pleaded the Government Abused Its
                Discretion when It Terminated the PSCs Without Any Reasonable
                Basis ..................................................................................................... 16

        C.      Plaintiffs Have Properly Pleaded That the Government Abused Its
                Discretion When It Terminated the PSCs in Violation of Law .......... 18

IV.     Plaintiffs Have Properly Pleaded Entitlement to Breach-of-Contract
        Damages Under Count I and Withdraw Count II ........................................... 18

V.      Plaintiffs Have Properly Pleaded the Basis for a Class Action Complaint ..... 19

        A.      The Court Should Decide Class Certification on the Parties' Rule
                23 Briefings, Not on a Motion to Dismiss ........................................... 20

        B.      In Any Event, Plaintiffs Have Properly Pleaded Sufficient Facts to
                Satisfy the Rule 23 Requirements ........................................................ 21

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*27-35 Jackson Ave. LLC v. United States*,
   162 Fed. Cl. 550 (2022), *aff'd sub nom. 27-35 Jackson Ave LLC v. United
   States*, 127 F.4th 1314 (Fed. Cir. 2025) ................................................................11

*Am-Pro Protective Agency, Inc. v. United States*,
   281 F.3d 1234 (Fed. Cir. 2002) ................................................................10, 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................1, 6

*Bowles v. United States*,
   144 Fed. Cl. 240 (2019) ..........................................................................19

*Caldwell & Santmyer, Inc. v. Glickman*,
   55 F.3d 1578 (Fed. Cir. 1995) ..................................................................15

*Dekatron Corp. v. United States*,
   128 Fed. Cl. 115 (2016) ..........................................................................11

*England v. Sys. Mgmt. Am. Corp.*,
   38 F. App'x 567 (Fed. Cir. 2002) ..............................................................16

*Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*,
   114 Fed. Cl. 258 (2013) ..................................................................15, 16, 19

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
   681 F.3d 1323 (Fed. Cir. 2012) ..................................................................7

*Kalvar Corp. v. United States*,
   543 F.2d 1298 (Ct. Cl. 1976) ..............................................................10, 15

*Keeter Trading Co. v. United States*,
   79 Fed. Cl. 243 (2007) ......................................................................11, 19

*Krygoski Const. Co. v. United States*,
   94 F.3d 1537 (Fed. Cir. 1996) ..........................................................15, 16, 19

*Kurkjian v. Sec'y of the Army*,
   No. 2020-2201, 2021 WL 3520624 (Fed. Cir. Aug. 11, 2021) ............................10

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017) ................................................................7, 13

*Lindsay v. United States*,
  295 F.3d 1252 (Fed. Cir. 2002)..............................................................................6

*Lumber v. United States*,
  No. 23-40, 2024 WL 1283532 (Fed. Cl. Feb. 7, 2024).............................................8

*McDonnell Douglas Corp. v. United States*,
  182 F.3d 1319 (Fed. Cir. 1999)............................................................................14

*N. Star Alaska Hous. Corp. v. United States*,
  76 Fed. Cl. 158, *dismissed*, 226 F. App'x 1004 (Fed. Cir. 2007)..........................11

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018)...........................................................................6, 8

*NI Industries, Inc. v. United States*,
  841 F.2d 1104 (Fed. Cir. 1988)............................................................................18

*Northrop Grumman Corp. v. United States*,
  46 Fed. Cl. 622 (2000) ....................................................................................9, 14

*Raytheon Company Space & Airborne System*,
  ASBCA No. 58068, 16-1 BCA ¶ 36,484 ................................................................18

*Santana v. Sheriff of Winnebago Cnty.*,
  No. 18 CV 50216, 2019 WL 1858522 (N.D. Ill. Apr. 25, 2019)..............................20

*Skinner v. Switzer*,
  562 U.S. 521 (2011).............................................................................................7

*Sommers Oil Co. v. United States*,
  241 F.3d 1375 (Fed. Cir. 2001)......................................................................6, 7, 8

*Struck Constr. Co. v. United States*,
  96 Ct. Cl. 186 (1942) .........................................................................................11

*T & M Distribs., Inc. v. United States*,
  185 F.3d 1279 (Fed. Cir. 1999)............................................................................15

*TigerSwan, Inc. v. United States*,
  110 Fed. Cl. 336 (2013) ......................................................................................15

*TigerSwan, Inc. v. United States*,
  118 Fed. Cl. 447 (2014) ........................................................................15, 16, 17

*Torncello v. United States*,
  681 F.2d 756 (Ct. Cl. 1982) ................................................................................19

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................20

Fed. R. Civ. P. 23(c)(1) ..............................................................................................20

Fed. R. Civ. P. 23(c)(1)(A) .........................................................................................20

RCFC 12(b)(6) ...............................................................................................................6

RCFC 23 ..................................................................................................................20, 21

**Other Authorities**

Wright, Miller & Kane, *Federal Practice & Procedure*, Civil 3d § 1798 ...................20

## INTRODUCTION

Beginning in January 2025, the Government dismantled the United States Agency for International Development ("USAID") by terminating Personal Services Contracts ("PSCs") *en masse* in bad faith and abuse of discretion, breaching Plaintiffs' contracts. As detailed in Plaintiffs' Amended Complaint (ECF 11), the Government justified this dismantling with unfounded statements fueled by animus towards USAID, including its employees and contractors, mustering, at best, pretextual justifications that were divorced from the facts. Additionally, the Government dismantled USAID in violation of law when the Executive Branch neither consulted with nor sought approval from Congress before it took actions—like terminating PSCs—to feed USAID into the "wood chipper."

Plaintiffs—USAID PSC contractors—filed Contract Disputes Act ("CDA") claims for breach-of-contract damages, based on the Government's improper terminations, and unpaid termination costs. The Government denied the CDA claims and Plaintiffs seek redress from this Court. The Government now moves to dismiss Plaintiffs' properly pleaded Amended Complaint.

The Government's Motion to Dismiss (ECF 15) should be denied because Plaintiffs have properly pled their claims with "sufficient factual matter, accepted as true" for "relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nonetheless, the Government urges this Court to adopt a heightened, merits-like standard at the pleading stage and further asks the Court to resolve factual disputes against Plaintiffs to bar them from the courthouse. This Court should reject the Government's insistence that Plaintiffs prove their case at the pleadings stage and, instead, apply controlling law to Plaintiffs' Amended Complaint.

The Government, moreover, incorrectly requires proof of bad faith by specific contracting officers directed at each Plaintiff. Plaintiffs have properly alleged that the Government acted in bad faith under the correct legal standard, which recognizes numerous

methods of establishing bad faith and underscores the propriety of considering the aggregate actions of Government actors rather than focusing on the contracting officer alone. Here, Government officials and actors publicly and baselessly maligned USAID as a "criminal organization," a "ball of worms," and a "viper's nest"; eventually announced that it was "[t]ime for [USAID] to die"; and then promptly implemented that directive by terminating PSCs. The Government cannot rely on the presumption of good faith or sweeping assertions that the terminations were properly policy-based to throw Plaintiffs out of court because these arguments are most appropriately weighed on the merits, not on the pleadings. In any event, the Court should decline the Government's invitation to narrow its view to only the contracting officers' motivations and intent when, under controlling law, Plaintiffs have properly pleaded that the contracting officers were treated as mere rubber stamps to Government officials and actors, *e.g.*, the Department of Government Efficiency ("DOGE"), the White House, Secretary Rubio, and then-Deputy Administrator Peter Marocco, that were ordering the terminations.

Plaintiffs have also properly pleaded that the Government abused its discretion because the Government's explanations for the terminations had no reasonable grounds, and the Government violated the law in effectuating the terminations. Both positions constitute abuse of discretion under controlling precedent. The only contemporaneous proffered rationale—that PSC contractors failed to serve "low-income countries" and thus served in a manner inconsistent with USAID's mission—was not based on facts, given that PSC contractors supported low-income or crisis geographies regardless of contractor duty station. The Government, moreover, violated the law by dismantling USAID and terminating PSCs *en masse* without the statutorily required Congressional consultation or authorization.

2

Concerning Plaintiffs' damages, the Government misstates the Amended Complaint, which properly seeks the value of each PSC as breach-of-contract damages, an approach that is consistent with how courts have provided relief to similarly improperly terminated contractors.

Finally, the Government's class-pleading attacks are premature and duplicative of the fully briefed class certification motion. Plaintiffs have alleged common, typical, and class-wide issues arising from the Government's mass termination of USAID PSCs, including common questions relating to bad faith, abuse of discretion, and resulting breach damages.

Because the Government's motion rests on an improper standard, invites the Court to resolve disputed facts, and ignores well-pleaded allegations of bad faith and abuse of discretion, the motion should be denied.

## BACKGROUND

Beginning in January 2025, over a matter of months, the Government announced its plans to eliminate USAID, publicly and baselessly attacked its mission and everyone who worked there, and set about terminating thousands of contracts—including PSCs—to eliminate the agency. In shuttering USAID, the Government charged rough-shod over bedrock contracting law principles.

On January 20, 2025, the President established DOGE to embed personnel within various executive branch agencies, including USAID. Amended Complaint (ECF 11) at 18 (¶¶ 80-81). The President publicly recognized Elon Musk as the *de facto* head of DOGE. *Id.* at 19 (¶¶ 82-84). Shortly thereafter, the Government, acting through DOGE and the Department of State ("State"), began dismantling USAID through a series of actions, including freezing all foreign assistance funds, accessing USAID Treasury payment systems, accessing USAID offices and attending meetings, removing USAID leadership, blocking USAID email accounts, and removing USAID's website. *Id.* at 20-21 (¶¶ 88-92, 94). On February 2, 2025, Mr. Musk

ordered the elimination of USAID stating, "USAID was a viper's nest of radical-left marxists (sic) who hate America. . . .  USAID is a criminal organization.  Time for it to die."  *Id.* at 21 (¶ 95).

In February 2025, the Government implemented Mr. Musk's order and began terminating USAID contracts and awards *en masse*, including PSCs.  *Id.* at 25-26 (¶¶ 104-107).  Plaintiffs alleged and the Government conceded that the mass terminations resulted from, and are necessarily conjoined with, the Government's efforts to unlawfully dismantle USAID.  *Id.* at 25 (¶ 104); Government Motion to Dismiss (ECF 15) at 12 ("The plaintiffs' terminations were the result of the reorganization of USAID, but their contracts were not treated any differently than the other personal service contracts that fell within the change in policy.").  At no point prior to these actions did the Executive Branch confer with or receive approval from Congress to dismantle USAID—an independent agency—as it was statutorily required to do.  *Id.* at 13-15, 23-25 (¶¶ 56-65, 103).

Contracting officers did not exhibit independent judgment and were, instead, displaced by Government officials and actors that ordered the immediate termination of thousands of contracts.  They emailed contracting officers spreadsheets listing USAID contracts and awards (including PSCs) and directed the contracting officers to immediately terminate them.  ECF 11 at 27-28 (¶¶ 115-122).  The emails indicated, at various points, that the orders came from DOGE, the White House, State, and "Agency" leadership.  ECF 11 at 27 (¶ 118).  Eventually, the Government specified to contracting officers that the directions to terminate tranches of contracts were based on Secretary Rubio and Mr. Marocco having "individually" and "personally reviewed" thousands of contracts within approximately a two-week period.  ECF 11 at 27-28 (¶¶ 119-122).

At that time, the same Government officials and actors directing the unlawful dismantling of USAID justified the actions with a barrage of unsupported statements, claiming that USAID was a "viper's nest of radical-left marxists (sic) who hate America," "a criminal organization," "a ball of worms," an organization "run by a bunch of radical lunatics," an agency "unaccountable to taxpayers . . . funnel[ing] massive sums of money . . . [for] ridiculous and, in many cases, malicious pet projects [] with next-to-no oversight," insubordinate to the current administration, "really corrupt," and "incompetent."  *See* ECF 11 at 21-23, 25 (¶¶ 95-102, 105-106).  At that time and subsequently, the Government did not identify the purported "policy goals" it sought to implement when dismantling USAID.  At one point, Mr. Marocco justified the first tranche of 800 PSC terminations by alleging—without basis—that the PSC contractors purportedly failed to serve low-income countries.[1] *Id.* at 25-26 (¶ 107).  But, despite Mr. Marocco's title as the second in command at USAID, his justification appeared erroneously based on the physical locations of PSC contractors rather than the countries they actually served.  *Id.* at 26-27 (¶¶ 108-114).

In mid-February through April 2025, the Government terminated PSC contractors *en masse* in its efforts to dismantle USAID.  ECF 11 at 6, 25 (¶¶ 13, 104).  Thereafter, Plaintiffs submitted CDA claims seeking breach-of-contract and unpaid termination damages.  *Id.* at 3-4 (¶¶ 1-6).  The Government denied Plaintiffs' CDA claims.  *Id.*

On July 28, 2025, Named Plaintiff, Andrea Danziger, filed a class action complaint to represent a potential class of more than one thousand PSC contractors seeking damages for the Government's improper terminations and unpaid termination costs.  *See generally* Complaint

---

[1] Although Mr. Marocco has sworn in numerous declarations that he was appointed Deputy Administrator on January 30, 2025, days before terminating the first tranche of PSCs, the public record is unclear about when Mr. Marocco was formally delegated the duties of Deputy Administrator.  *See id.* at 21 (¶ 93).

(ECF 1).  On November 18, 2025, Plaintiffs amended their Complaint with additional Named Plaintiffs to represent the same class of PSC contractors.  *See generally* ECF 11.  The Government now moves to dismiss Plaintiffs' Amended Complaint, which seeks recovery of breach-of-contract and unpaid termination damages.  *See generally* ECF 15.

## ARGUMENT

**I.    The Government Urges the Court to Apply Heightened and Incorrect Pleading Standards to Plaintiffs' Amended Complaint**

The Court should reject the Government's Motion to Dismiss because the Government misreads and misapplies the relevant caselaw.  Specifically, the Government urges this Court to disregard well-established pleading standards and, instead, to evaluate—at the pleading stage—whether Plaintiffs carry the evidentiary burden of proof.  This is not the standard.  Under Rule 12(b)(6) of the Court of Federal Claims ("RCFC"), the Court "must accept as true all of the allegations in the [pleading]" and "must indulge all reasonable inferences in favor of the nonmovant."  *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).  The Court may only grant a motion to dismiss "when the facts asserted by the claimant[s] do not entitle [them] to a legal remedy."  *See Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

The law is clear: Plaintiffs' complaint need only "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  *Ashcroft*, 556 U.S. at 678.  The plausibility standard does not impose a *probability* requirement at the pleading stage; it calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support the plaintiffs' allegations.  *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018).

The Government instead conflates the burden of proof with the pleading standard and proposes that the Court raise the pleading-bar beyond the Court's well-established standards. The Government argues, without case citations, that Plaintiffs must *prove* their case in the Amended Complaint. *See, e.g.*, ECF 15 at 9 ("plaintiffs must present 'well-nigh irrefragable proof'"); *id.* (invoking the "weighty" burden of proof); *id.* at 11 (asserting that Plaintiffs have not established or demonstrated bad faith); *id.* at 13 (stating Plaintiffs have not met the "high burden to plead abuse of discretion"). Plaintiffs, however, need not "prove [their] case at the pleading stage." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017); *see also In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012) (citing *Skinner v. Switzer*, 562 U.S. 521, 529 (2011)).

Moreover, the Government presents factual disputes in its motion that are entirely inappropriate at this stage of the case, inviting this Court to ignore the requirement to "indulge all reasonable inferences" in favor of Plaintiffs. *Sommers Oil*, 241 F.3d at 1378. Unable to make credible arguments under the applicable pleading standard, the Government instead asks this Court to credit, and rely on, a parade of speculative "facts" to attack Plaintiffs' Amended Complaint. For example, the Government characterizes the terminations as effectuated under an alleged *policy change* to *reorganize* USAID. ECF 15 at 2, 12. The Government also presumes without any apparent support that individual contracting officers exercised independent judgment when terminating the PSCs, *id.* at 10 (asserting that Plaintiffs failed to allege animus from the contracting officers), and that those termination decisions were entirely unrelated to the public statements from Government officials and actors clearly exhibiting bad faith. *Id.* at 17 (asserting that, contrary to alleged facts, executive branch decisions to dismantle USAID and termination decisions were "separate actions").

But, supported by public reporting and documentation, Plaintiffs have properly pleaded that top Government officials directed the terminations, rendering the cognizant contracting officers effective rubber stamps. ECF 11 at 27-28 (¶¶ 115-122). The Government may not agree with these facts, as pleaded, and may eventually seek to debunk them; but the Government cannot gain the dismissal of a complaint because it hopes to eventually challenge these facts. Plaintiffs are entitled to these allegations being accepted as true and reasonable inferences being drawn in the Plaintiffs' favor at the pleading stage. *Sommers Oil*, 241 F.3d at 1378. On their merits, these disputed facts are better tested by the Government (to the extent they can be) on the merits, not on the pleadings. *Id.*; *see also Lumber v. United States*, No. 23-40, 2024 WL 1283532, at *8 (Fed. Cl. Feb. 7, 2024) ("On a motion to dismiss, however, a court may not resolve a disputed factual issue and must accept the allegations of the complaint as true."). Thus, the Government has not—and cannot—show that the Plaintiffs' allegations fail to state a claim.

Plaintiffs have properly pleaded that the Government terminated the PSCs in bad faith and by abusing its discretion. Plaintiffs' Amended Complaint alleged that the Government's improper dismantling of USAID resulted in the termination of all PSCs. *See generally* ECF 11 at 7-31 (¶¶ 20-137). The Amended Complaint properly relied, in part, on widely available public information regarding the destruction of USAID. *See generally id.* (citing news reports, public statements from Government offices, officials, and actors, court filings, and coverage of internal USAID documents).

Certainly, Plaintiffs have provided sufficient facts to raise a reasonable expectation that discovery will reveal additional evidence of the Government's bad faith and abuse of discretion when terminating the PSCs. *Nalco Co.*, 883 F.3d at 1350. Because the Court "must indulge all reasonable inferences in favor of the nonmovant," *Sommers Oil*, 241 F.3d at 1378, the

Government cannot ignore Plaintiffs' well-pleaded facts in favor of its own counter-narrative and ask the Court to adopt the Government's rewrite.

The Government, moreover, does not get a pass on its conduct by labeling the conduct as "political." The Government contends that the Amended Complaint "invites this Court to weigh into the motivations of political decisions reached by the executive branch about the organization and priorities of USAID." ECF 15 at 8-9. This is misdirection. Courts must necessarily consider the motivations of relevant actors with respect to claims of bad faith and claims of abuse of discretion. *See, e.g.*, *Northrop Grumman Corp. v. United States*, 46 Fed. Cl. 622, 627 (2000) (considering the Government's "motive and intent"). The Government effectively asks the Court to endorse the Executive Branch's conduct towards its contracting partners without question, at the pleading stage, however unlawful the conduct may be. This, of course, is not the law.

Accordingly, the Court should reject the Government's efforts to heighten the proper pleading standard and to re-cast Plaintiffs' properly pleaded facts. And, thus, the Government's Motion to Dismiss should be denied.

## II.    Plaintiffs Have Properly Pleaded That the Government Breached the PSCs by Terminating Them in Bad Faith

The Amended Complaint properly pleaded that the Government breached the PSCs by terminating them in bad faith. Bad faith occurs when Government officials and actors proceed with animus, malice, an intent to injure, or engage in a course of conduct that is designedly oppressive, when considering the aggregate actions of those Government officials and actors. This inquiry is highly fact-specific and, as discussed above, the Court should not resolve factual disputes at the pleadings stage. Under the appropriate standard, the Amended Complaint has properly alleged that the Government acted in bad faith and its Motion should be denied. The

Court should reject the Government's litigating position that seeks to narrow the standard to encompass only an individual contracting officer's specific intent to injure at the time of the termination notice.

> **A.    The Government Incorrectly Suggests that "Specific Intent to Injure the Plaintiff" by Each Contracting Officer Is the Only Way to Show Bad Faith**

The Court should reject the Government's efforts to narrow the range of conduct that qualifies for bad faith. A standard that narrowly restricts bad faith would be convenient for the Government, but it would be contrary to law and leave contractors open to a range of bad faith actions from the Executive Branch without remedy.

Specifically, the Government argues that bad faith can only be found when the contracting officer has the specific intent to injure specific plaintiffs. *See* ECF 15 at 10 ("The plaintiffs have [not] alleged that the contracting officer terminating their contracts did so with a specific intention to injure them[.]"). This is not the applicable legal standard.

*First*, courts have consistently recognized that specific intent to injure is only one of several ways to meet the requisite standard. In addition to specific intent to injure, bad faith can be shown by establishing that actions are motivated by malice, a conspiracy to get rid of a contractor, a course of conduct that is designedly oppressive, actions actuated by animus, or when a contracting officer fails to exercise independent judgment and remedy another official's animus. *Kalvar Corp. v. United States*, 543 F.2d 1298, 1302 (Ct. Cl. 1976) (describing bad faith in various ways); *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002) (same); *see also Kurkjian v. Sec'y of the Army*, No. 2020-2201, 2021 WL 3520624, at *5 (Fed. Cir. Aug. 11, 2021) (noting the standard for bad faith may apply to officials other than contracting officers).

*Second*, contrary to the Government's argument, Plaintiffs are not required to allege or prove that each individual contracting officer acted in bad faith at the time of each termination. *See* ECF 15 at 10 ("But while plaintiffs identify some harsh statements made about USAID, none of the statements they reference were made by the individuals who ultimately made the decision to terminate their contracts, nor were those statements directed at plaintiffs.").  Rather, courts consider the aggregate actions of the Government, especially when allegations include more than a single discrete decision.  *See Dekatron Corp. v. United States*, 128 Fed. Cl. 115, 119 (2016) (applying the standard established in *Struck Constr. Co. v. United States*, 96 Ct. Cl. 186, 221 (1942) and followed in a myriad of cases).  Indeed, Judges at this Court have expressly rejected any "artificial rigor" to assessing whether plaintiffs have established bad faith by requiring plaintiffs to find an "arsenal" of smoking guns "each distinctly tethered to a particular harmful action."  *N. Star Alaska Hous. Corp. v. United States*, 76 Fed. Cl. 158, 189, *dismissed*, 226 F. App'x 1004 (Fed. Cir. 2007).

Courts have consistently recognized the fact-specific nature of the inquiry and multiple bases on which to identify bad faith, beyond the narrow path advanced by the Government.  *See, e.g.*, *27-35 Jackson Ave. LLC v. United States*, 162 Fed. Cl. 550, 561-63 (2022), *aff'd sub nom. 27-35 Jackson Ave LLC v. United States*, 127 F.4th 1314 (Fed. Cir. 2025) (examining the facts specific to the bad faith allegations); *Keeter Trading Co. v. United States*, 79 Fed. Cl. 243, 265 (2007) (denying a motion for summary judgment because bad faith is an "intensely factual question").

Indeed, the inquiry advanced by the Government is not only inconsistent with the caselaw, but it would also render it impossible for plaintiffs to challenge bad faith conduct by an agency unless the bad faith originated with a single cognizant contracting officer.  Adopting this

standard would eliminate the need for a fact-based inquiry related to bad faith and simply bar the courthouse door for plaintiffs injured by a wide range of bad faith conduct.

### B.    Plaintiffs Have Properly Pleaded Bad Faith Under the Correct Standard

Plaintiffs have properly pleaded that the Government acted in bad faith.  Plaintiffs have alleged that the Government repeatedly justified its dismantling of USAID by attacking the agency and everyone that worked there with unfounded statements fueled by animus towards USAID.  ECF 11 at 21-23, 25 (¶¶ 95-102, 105-106).  Plaintiffs have alleged that the same Government officials and actors compelled contracting officers to terminate USAID contracts *en masse* with no independent review.  *See id.* at 27-28 (¶¶ 115-122).[2]  And Plaintiffs have alleged—and the Government concedes—that the decision to dismantle USAID was necessarily connected to the decision to terminate the PSCs *en masse*.  *See id.* at 25 (¶ 104); *see also* ECF 15 at 12.

Indeed, Government officials made their motivation and intent clear with their public statements.  When justifying the dismantling of USAID, Government officials and actors openly stated they were doing so because USAID is a "viper's nest of radical-left marxists (sic) who hate America," "a criminal organization," "a ball of worms," an organization "run by a bunch of radical lunatics," an agency "unaccountable to taxpayers . . . funnel[ing] massive sums of money . . . [for] ridiculous and, in many cases, malicious pet projects [] with next-to-no oversight," insubordinate to the current administration, "really corrupt," and "incompetent."  *See* ECF 11 at 21-23, 25 (¶¶ 95-102, 105-106).  The Government dismisses these statements as "harsh," ECF 15

---

[2] The Government notes that Plaintiffs excerpted portions of Mr. Lewin's declaration.  *See* ECF 15 at n.2; *compare* ECF 1-4 *and* 11-4.  Consistent with Chamber Rules that "[e]xhibits shall exclude irrelevant material[,]"  ECF 5 at 3, Plaintiffs excerpted several exhibits to the Amended Complaint to exclude materials not cited in the Amended Complaint, indicating when it did so in the table of exhibits.  *See, e.g.*, ECF 11 at 35.

at 10, but they are exactly the types of statements that support Plaintiffs' allegations that the Government acted in bad faith when dismantling USAID and terminating the PSCs.  These public statements and the mass terminations that followed also belie any notion that individual contracting officers exhibited discretion or independent judgment when issuing or signing the mass terminations.

Moreover, the Government's reliance on the presumption of good faith to seek dismissal of the Amended Complaint when Plaintiffs have properly pleaded that the Government acted with bad faith and abused its discretion is improper at the pleading stage.  The presumption of good faith is a *rebuttable presumption* overcome by evidence on the merits.  *See Am-Pro*, 281 F.3d at 1240 (clarifying the standard of proof that attaches to the presumption of good faith).  The Government cannot rely on an evidentiary standard to dismiss Plaintiffs' well-pleaded claims.  *See Lifetime Indus.*, 869 F.3d at 1379 (plaintiffs need not "prove [their] case at the pleading stage").  Indeed, if the presumption of good faith was not rebuttable, as the Government seems to believe, then no plaintiff could ever allege bad faith.

Additionally, the presumption of good faith attaches to Government officials exercising their official duties.  *See Am-Pro*, 281 F.3d at 1239.  Plaintiffs have properly pleaded exceptions to the scope of this presumption.  Mr. Marocco issued the directive to terminate 800 PSCs on February 2, 2025, ECF 11 at 25-26 (¶ 107), but Plaintiffs have alleged that, as considered by other courts, Mr. Marocco may have been acting outside of his official duties.  *See id.* at 21 (¶ 93).  Similarly, Plaintiffs have alleged that Mr. Musk and DOGE were instrumental to dismantling USAID, leading to the mass termination of PSCs.  *See id.* at 21-22 (¶¶ 96, 99).  Plaintiffs also allege that DOGE was directing terminations of USAID contract and awards, *id.* at 27 (¶¶ 115-118), and that Mr. Marocco previously swore that the "DOGE Team cannot legally

direct me to do anything regarding personnel, funding, or the like." ECF 11-3 at 12 (Marocco Declaration).

Accordingly, Plaintiffs have properly alleged that, to the extent Mr. Marocco was issuing orders outside his authority or to the extent Mr. Musk or DOGE ordered the dismantling of USAID or termination of contracts, these actions would be outside the bounds of the presumption of good faith. Factual disputes about whether the presumption of good faith should apply may be resolved on the merits, not on a motion to dismiss.

### C.    The Government's Argument That the Terminations Resulted from "Programmatic" Choices Underscores That Dismissal is Not Warranted

Finally, the Government seeks to immunize the termination decisions by arguing that they resulted from lawful, programmatic policy choices or reorganization efforts. *See* ECF 15 at 12, 17. The Government argues that, even if programmatic decisions were made in bad faith, programmatic decisions are necessarily "separate actions" under caselaw and such motivations cannot be considered when assessing the termination decision. *Id.* But the cases the Government cites stand for the opposite proposition. *See, e.g.*, *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1329 (Fed. Cir. 1999) (stating that the standard required examining whether the termination was made on a pretextual basis unrelated to performance); *Northrop Grumman Corp.*, 46 Fed. Cl. at 627 (considering officials' "motive and intent"). Thus, the Court should reject the Government's artificial distinction between programmatic decisions and termination decisions, which is not supported by the cases the Government cites. Indeed, these cases support the Court reviewing the Government's motive and intent.

### III.    Plaintiffs Have Properly Pleaded That the Government Abused Its Discretion When It Terminated the PSCs

The Court should also reject the Motion to Dismiss because Plaintiffs have properly and separately alleged that the Government abused its discretion, providing no reasonable basis for

the terminations and violating the law when terminating the PSCs in conjunction with

dismantling USAID.

A.    **The Government Incorrectly Argues There is No Articulated Standard for Establishing Abuse of Discretion Without Also Establishing Bad Faith**

The Court should reject the Government's efforts to collapse the bad-faith and the abuse-

of-discretion analyses.  The Government argues that "there is no clear legal test for abuse of

discretion without a finding of bad faith."  ECF 15 at 13.  This is incorrect.  When considering

whether the Government improperly terminated a contract, the Federal Circuit and predecessor

courts have recognized the distinct considerations for bad faith and abuse of discretion:

> The Federal Circuit has recognized that a termination for convenience may give
> rise to a breach of contract claim in the very limited circumstances when "the
> agency (1) terminates the contract in bad faith or (2) abuses its discretion in its
> decision to terminate the contract."  *TigerSwan, Inc. v. United States*, 110 Fed. Cl.
> 336, 345 (2013) (citing *T & M Distribs., Inc. v. United States*, 185 F.3d 1279,
> 1283 (Fed. Cir. 1999); *Krygoski Const. Co. v. United States*, 94 F.3d 1537, 1541
> (Fed. Cir. 1996); *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581
> (Fed. Cir. 1995); *Kalvar Corp. v. United States*, 211 Ct. Cl. 192, 204, 543 F.2d
> 1298 (1976)).  Here, plaintiff argues that the government is liable for breach of
> contract because the [contracting officer] abused his discretion when he decided
> to terminate for convenience.[3]

*TigerSwan, Inc. v. United States*, 118 Fed. Cl. 447, 451 (2014).  Indeed, abuse of discretion and

bad faith provide independent bases for finding the Government breached a contract by improper

termination.  *See, e.g.*, *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 114 Fed. Cl. 258, n.2

and 409 (2013) (holding that the Government abused their discretion by arbitrary and

unreasonable termination decisions, while plaintiffs expressly disclaimed bad faith).

---

[3] The Federal Circuit has also stated that improper terminations occur "when the Government
enters a contract with no intention of fulfilling its promises."  *Krygoski*, 94 F.3d at 1545 (Fed.
Cir. 1996).  Plaintiffs have not currently alleged that the Government entered the PSCs with no
intention of fulfilling its promises.

Contrary to the Government's argument, this Court has employed separate standards for bad faith and for abuse of discretion. Specifically, under the abuse of discretion standard, a court considers whether the Government had any reasonable grounds for its decision and whether the Government violated the law with its decision. *See Krygoski*, 94 F.3d at n.3 (Fed. Cir. 1996); *see also TigerSwan*, 118 Fed. Cl. at 451.[4] Each of these factors may separately provide a basis for determining the Government abused its discretion. *England v. Sys. Mgmt. Am. Corp.*, 38 F. App'x 567, 571 (Fed. Cir. 2002) (providing that bad faith, no reasonable basis, and violation of a statute or regulation "can each separately provide a basis for relief"). Here, Plaintiffs in their Amended Complaint have properly alleged both that the Government lacked any reasonable grounds for its termination decisions and also that those decisions violated the law.

**B.    Plaintiffs Have Properly Pleaded the Government Abused Its Discretion when It Terminated the PSCs Without Any Reasonable Basis**

Plaintiffs have properly pleaded that the Government abused its discretion—under a standard distinct from the one governing bad faith—because there was no reasonable basis for the mass terminations, and the purported bases for some of the terminations was a pretextual decision to implement the dismantling of USAID. Under the applicable standard, courts assess whether the Government had an objectively reasonable or rational justification for the decision. *See England*, 38 F. App'x at 571; *TigerSwan*, 118 Fed. Cl. at 453 (considering whether a termination decision was objectively rational); *Gulf Grp.*, 114 Fed. Cl. at 409 (various shifting justifications contrary to fact did not provide a reasonable basis for terminations). Additionally, courts do not defer to contracting officers, as they typically do, when contracting officers

---

[4] There are "four factors to apply in determining whether contracting officers abused their discretion: (1) the procurement official's bad faith, (2) the reasonableness of the decision, (3) amount of discretion delegated to the procurement official; and (4) violations of an applicable statute or regulation alone may be arbitrary." *Krygoski*, 94 F.3d 1537, n.3 (Fed. Cir. 1996); *see also TigerSwan*, 118 Fed. Cl. at 451. Plaintiffs address factors two and four in this section.

exercise no independent judgment and rely on officials that similarly did not investigate facts. *TigerSwan*, 118 Fed. Cl. at 453.

Here, Plaintiffs have properly alleged that the contracting officers did not independently exercise judgment and were, instead, directed to issue terminations based on unsupported facts presented by others, so the termination decisions do not merit any deference. *See, e.g.*, ECF 11 at 28 (¶ 122). Moreover, the only justification the Government offered for terminating the first tranche of 800 PSCs was not objectively rational or reasonable and lacked a factual basis. *Id.* at 25-27 (¶¶ 107-114) (explaining that PSC contractors supported low-income countries regardless of their stationed location). The Government did not offer a justification for subsequent terminations, only stating that Secretary Rubio and Mr. Marocco personally and individually reviewed thousands of contracts and awards. *Id.* at 27-28 (¶¶ 119-122).

Plaintiffs have also properly alleged that Mr. Marocco's reasoning was a *pretextual* justification for unlawfully dismantling USAID. In a flurry of activities prior to Mr. Marocco's directive, the Government had already decided to eliminate USAID. These activities included Secretary Rubio freezing all new foreign assistance for a purported review; DOGE accessing USAID Treasury payment systems; DOGE accessing USAID offices and attending meetings; DOGE removing USAID leadership; DOGE blocking USAID email accounts and removing USAID's website; and Mr. Musk publicly pronouncing that it was "[t]ime for [USAID] to die." *Id.* at 20-22 (¶¶ 88-90, 92, 94, 95). Mr. Marocco's directive to terminate 800 PSCs came on the heels of these activities and Mr. Musk's order to eliminate USAID.[5] *Id.* at 25-26 (¶ 107); ECF 11-5 at 2.

---

[5] Additionally, as of February 2, 2025, it is unclear whether Mr. Marocco had the proper authority to approve the termination of 800 PSCs. *Id.* at 21 (¶ 93).

Accordingly, the Court should not afford any deference to the termination decisions and conclude that Plaintiffs have sufficiently pleaded that the Government had no reasonable basis for terminating PSCs *en masse*.  The Government's arguments that its decision may be based on rational justifications is more appropriately considered on the merits, not on a motion to dismiss the pleadings.

### C.    Plaintiffs Have Properly Pleaded That the Government Abused Its Discretion When It Terminated the PSCs in Violation of Law

The Government does not address Plaintiffs' allegations that the Government abused its discretion by terminating PSCs in violation of law, as part of dismantling USAID.  The Government abuses its discretion when it violates the law.  *See NI Industries, Inc. v. United States*, 841 F.2d 1104 (Fed. Cir. 1988) (violation of law by relying on unpublished decision); *Raytheon Company Space & Airborne System*, ASBCA No. 58068, 16-1 BCA ¶ 36,484 (violation of law by disregarding regulation).

This is precisely what the Amended Complaint alleged.  Congress, through appropriations laws, limited the Executive Branch's power to reorganize USAID (an independent agency) without first consulting Congress.  ECF 11 at 14-15 (¶¶ 62-65).  Plaintiffs properly allege that the Government dismantled USAID without consultation with, or approval from, Congress.  *Id.* at 20-25 (¶¶ 87-103).  Other than admitting that the terminations were part of its efforts to dismantle USAID, the Government does not dispute or even address the legality of throwing USAID into a "wood chipper."  ECF 11 at 22 (¶ 99).  Thus, Plaintiffs have properly alleged that the Government terminated the PSCs in violation of law.

### IV.    Plaintiffs Have Properly Pleaded Entitlement to Breach-of-Contract Damages Under Count I and Withdraw Count II

The Government misconstrues the nature of this case and the claims for damages. Plaintiffs have properly pleaded a class action suit for breach of contract arising from the

improper terminations of PSCs. When the Government improperly terminates a contract and thus breaches it, the contractor is entitled to termination costs and breach-of-contract damages. *See Gulf Grp.*, 114 Fed. Cl. at 390 (quoting *Krygoski Constr.*, 94 F.3d at 1541, 1545); *Bowles v. United States*, 144 Fed. Cl. 240, 253 (2019); *Keeter Trading*, 79 Fed. Cl. at 263 (citing *Torncello v. United States*, 681 F.2d 756, 772 (Ct. Cl. 1982)).

In contracts similar to the PSCs where the balance of the contract is effectively the contractor's compensation, the measure of damages for breach is the value of the contract, *i.e.*, the amount that would have been paid under the contract but for the breach.[6] *See Bowles*, 144 Fed. Cl. at 253 (2019) (awarding the balance of the contract value for an improper termination). Accordingly, under Count I of the Amended Complaint, Plaintiffs have properly pleaded for the recovery of the balance of each PSC. ECF 11 at 32 (¶ 145). Plaintiffs have not sought lost compensation under the PSCs' termination clauses.[7]

## V.    Plaintiffs Have Properly Pleaded the Basis for a Class Action Complaint

This Court should deny the Government's Motion to Dismiss with respect to its arguments about the sufficiency of Plaintiffs' pleadings for a class action complaint because the Government's arguments are properly considered in Plaintiffs' Motion to Certify Class (ECF 14), which the parties have fully briefed. Moreover, even if the Court were to consider the

---

[6] Plaintiffs do not otherwise argue that the PSC contractors were Government employees.

[7] Plaintiffs included, as an alternative, Count II seeking termination costs permitted under the termination clause in case some plaintiffs do not receive their full termination costs, separate and apart from breach damages. Plaintiffs, with leave from the Court, will agree to withdraw Count II at this time without prejudice, reserving the right to amend the Amended Complaint to the extent the Government fails to pay any putative class member the termination costs due. In any case, differences in damages are of no moment when considering Plaintiffs' Amended Complaint because of the common legal issues and facts related to the Government's improper termination. *See* Sec. V.B, below.

Government's arguments in the Motion to Dismiss, Plaintiffs have properly alleged facts to satisfy Rule 23 requirements.

### A.    The Court Should Decide Class Certification on the Parties' Rule 23 Briefings, Not on a Motion to Dismiss

The Government invites the Court to adjudicate the merits of Plaintiffs' class on a motion to dismiss, rather than through the parties' full briefing of the Plaintiffs' Motion to Certify Class. The Court should reject this invitation, which requires unnecessary duplication, and would shortchange the Plaintiffs' full, Rule 23 analysis.  *See* ECF 14 (Plaintiffs' Motion to Certify Class); ECF 16 (Government Opposition); ECF 17 (Plaintiffs' Reply).

Courts have recognized that questions about whether plaintiffs have sufficiently alleged class certification under Rule 23 are properly considered on motions to certify a class.  *See Santana v. Sheriff of Winnebago Cnty.*, No. 18 CV 50216, 2019 WL 1858522, at *2-3 (N.D. Ill. Apr. 25, 2019) (denying the motion to dismiss which challenged plaintiff's class action allegations as "premature").  Indeed, the court in *Santana* stated:

> Compliance with the Rule 23 prerequisites theoretically should not be tested by a motion to dismiss.  The proper vehicle is Rule 23(c)(1)(A), which provides that, at an early practicable time, the court must "determine by order whether to certify the class as a class action."  Therefore, a party wishing to challenge the validity of maintaining the action under Rule 23 should move for a determination under Rule 23(c)(1) that a class action is unwarranted.

*Id.* at 2-3 (quoting Wright, Miller & Kane, *Federal Practice & Procedure*, Civil 3d § 1798). This Court should likewise reject the Government's Motion to Dismiss as the wrong vehicle for its arguments regarding Plaintiffs' Motion to Certify Class, especially when the parties have fully and separately briefed that motion.

### B.    In Any Event, Plaintiffs Have Properly Pleaded Sufficient Facts to Satisfy the Rule 23 Requirements

Even if the Court were to consider the Government's class-certification arguments in its motion to dismiss, which it should not, Plaintiffs have properly alleged sufficient facts in its Amended Complaint to satisfy Rule 23.

The Amended Complaint alleged that there are common questions of law and fact and typicality applicable to the class.[8]  The Amended Complaint alleged that the Government terminated the PSCs *en masse* in furtherance of its dismantling of USAID and the Government does not dispute this fact.  *See* ECF 11 at 25 (¶ 104); *see also* ECF 15 at 12.  Plaintiffs sufficiently pleaded that the Government's actions constituted bad faith (*see* Sec. II *supra*) and, separately, abuse of discretion (*see* Sec. III *supra*), thus supporting Plaintiffs' breach-of-contract arguments for all PSC contractors.  *See also* ECF 14 at 2-20 (providing facts common to the proposed class); ECF 17 at 3-6 (addressing the Government's commonality and typicality arguments).

The Government's argument that Plaintiffs in the proposed class had different job duties and would be able to obtain different damage amounts, track the arguments the Government proffered in its Opposition to Plaintiffs' Motion to Certify Class.  *See* ECF 16 at 11-17.  Plaintiffs address these arguments in its Reply to the Government's Opposition.  *See* ECF 17 at 3-6.  In short, the differences on which the Government relies in its Motion to Dismiss are inconsequential when considering class certification because the class presents common legal issues and facts related to the Government's improper termination of PSC contractors in the proposed class.  *See id.*

---

[8] In the Motion to Dismiss, the Government does not challenge that Plaintiffs and counsel are adequate or that the class action is superior to other methods.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the

Government's Motion to Dismiss.

Dated: January 6, 2026

Respectfully Submitted,

*/s/Stephen J. McBrady*
Stephen J. McBrady
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500
SMcBrady@Crowell.com

***Attorney for Plaintiffs***

**Of Counsel:**
Charles Baek
Sharmistha Das
Kenneth Dintzer
Eric Herendeen

Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500
SMcBrady@Crowell.com

Joshua Sohn

Crowell & Moring LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001

## CERTIFICATE OF SERVICE

I certify that on January 6, 2026, a copy of the foregoing Opposition to the Government's Motion to Dismiss was filed electronically using the Court's Electronic Case Filing ("ECF") system.  I understand that notice of this filing will be served on Defendant's Counsel via the Court's ECF system.

*/s/Stephen J. McBrady*
Stephen J. McBrady
Crowell & Moring LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2500
SMcBrady@Crowell.com
