No. 25-1241

(Judge Tapp)

### IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ANDREA DANZIGER,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

### DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

|  |  |
|---|---|
|  | BRETT A. SHUMATE |
|  | Assistant Attorney General |
|  |  |
|  | PATRICIA M. McCARTHY |
|  | Director |
|  |  |
|  | MARTIN F. HOCKEY, JR. |
|  | Deputy Director |
| <u>OF COUNSEL</u> |  |
| Rachel B. Cochran | STEPHANIE A. FLEMING |
| Assistant General Counsel | Trial Attorney |
| U.S. Agency for Int'l Development | Commercial Litigation Branch |
|  | Civil Division |
|  | U.S. Department of Justice |
|  | P.O. Box 480, Ben Franklin Station |
|  | Washington, DC 20044 |
|  | Telephone: (202) 616-0170 |
|  | Facsimile: (202) 305-2062 |
|  | Stephanie.Fleming@usdoj.gov |
|  |  |
|  | *Attorneys for Defendant* |
| Dated:  January 20, 2026 |  |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

ARGUMENT ........................................................................................................................................ 2

I.     Plaintiffs Seek to Relax the Pleading Standard to Near Invisibility By Blurring the Legal Distinction Between Facts and Legal Conclusions. ............................ 2

II.    Plaintiffs Did Not Identify the Appropriate Legal Standard for "Bad Faith" Claims or Sufficiently Allege Bad Faith In the Termination of the PSC Contracts.. .................................................................................................................... 4

      A.     Bad Faith Requires a Specific Intent to Injure or an Animus Towards the Contractor .............................................................................. 4

      B.     Plaintiffs Do Not Sufficiently Plead a Claim of "Bad Faith" in the Termination for Convenience of the PSC Contracts ................................ 5

      C.     The Plaintiffs' Attempt to Reach Beyond the Contracts at Issue to Investigate the Funding and Organization Decisions of the Executive Branch Are Improper .................................................................. 7

III.   Plaintiffs Do Not Sufficiently Plead Abuse of Discretion Because They Cannot Plead Bad Faith ........................................................................................ 9

IV.   The Court Need Not Resolve Class Action To Dismiss Plaintiffs' Complaint ............................................................................................................ 111

CONCLUSION ................................................................................................................................. 12

## TABLE OF AUTHORITIES

Cases

*27-35 Jackson Ave. v. United States*,
  162 Fed. Cl. 550 (2022), *aff'd,* 127 F. 4th 1314 (Fed. Cir. 2025) .............................................. 7

*Acceptance Ins. Cos., Inc. v. United States*,
  583 F.3d 849 (Fed. Cir. 2009) ................................................................................................... 2

*Alliant Techsystems, Inc. v. United States,*
  178 F.3d 1260 (Fed.Cir.1999) .................................................................................................. 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................................... 2, 6, 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................. 2

*Christian v. United States*,
  46 Fed. Cl. 793 (2000) ........................................................................................................... 11

*Coastal Corp. v. United States*,
  6 Cl. Ct. 337 (1984) ................................................................................................................. 8

*Cooke v. United States*,
  1 Cl. Ct. 695 (1983) ............................................................................................................... 10

*Dekatron Corp. v. United States*,
  128 Fed. Cl. 115 (2016) ........................................................................................................... 6

*Greenlee Cty. v. United States*,
  487 F.3d 871 (Fed. Cir. 2007) ................................................................................................ 11

*Kalvar Corp., Inc. v. United States*,
  543 F.2d 1298 (Ct. Cl. 1976) ................................................................................................... 4

*Keco Indus., Inc. v. United States*,
  492 F.2d 1200 (Ct. Cl. 1974) ................................................................................................... 9

*Krygoski Constr. Co., Inc. v. United States*,
  94 F.3d 1537 (Fed. Cir. 1986) .............................................................................................. 8, 9

*Librach v. United States*,
  147 Ct. Cl. 605 (1959) ............................................................................................................. 4

*McDonnell Douglas Corp. v. United States,*
  182 F.3d 1319 (Fed. Cir. 1999) ............................................................................................ 8, 9

*Northrop Grumman Corp. v. United States*,
   46 Fed. Cl. 622 (2000) .................................................................................................... 7, 8

*Rd. & Highway Builders, LLC v. United States*,
   702 F.3d 1365 (Fed. Cir. 2012) ............................................................................................ 4

*Robert F. Simmons & Assocs. v. United States*,
   175 Ct. Cl. 510 (1966) .......................................................................................................... 7

*Sommers Oil Co. v. United States*,
   241 F.3d 1375 (Fed. Cir. 2001) ............................................................................................ 2

*N. Star Alaska Hous. Corp. v. United States*,
   76 Fed. Cl. 158 (2007) ......................................................................................................... 7

*Struck Constr. Co. v. United States*,
   96 Ct. Cl. 186 (1942) ........................................................................................................... 4

*Todd Constr., L.P. v. United States*,
   94 Fed. Cl. 100 (2010) ....................................................................................................... 10

Statutes

28 U.S.C. §§ 601-13 ..................................................................................................................... 8

28 U.S.C. § 1491(a)(2) .................................................................................................................. 8

Rules

RCFC 23(b)(2)-(3) ...................................................................................................................... 10

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ANDREA DANZIGER, DEBORAH MURPHY, MARK HERZBERG, KENNETH SKLAW, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | No. 25-1241 <br> (Judge Tapp) |

### DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this reply in support of the Government's motion to dismiss for failure to state a claim upon which relief may be granted, following the opposition submitted by plaintiffs, Andrea Danziger, Deborah Murphy, Mark Herzberg, and Kenneth Sklaw on behalf of themselves and similarly situated plaintiffs (plaintiffs).  Plaintiffs failed to sufficiently allege a claim of "bad faith" in the termination for convenience of their personal services contract for the United States Agency for International Development (USAID) because they have not alleged a specific intent to injure the contractors, the statements on which they base their bad faith claim were made by Government actors not involved in the termination decision, and allegations against the Government actors who authorized and executed the terminations for convenience are insufficient to plead "bad faith." Nor have plaintiffs pled a sufficient abuse of discretion claim, as the standard plaintiffs seek to apply requires as a predicate a pleading sufficient to show bad faith, which they cannot meet. Nor should this court grant the plaintiff class certification, as the plaintiffs allege differences in

contract termination decision-making by the Government for various plaintiffs that present separate legal and factual issues. For all of these reasons, we urge the Court to grant the Government's motion to dismiss plaintiffs' Amended Complaint, ECF No. 14 (Am. Compl.).

## ARGUMENT

I.  **Plaintiffs Seek to Relax the Pleading Standard to Near Invisibility By Blurring the Legal Distinction Between Facts and Legal Conclusions.**

Plaintiffs argue that the Government seeks to impose a "probability requirement" at the pleading stage, *see* Pl. Opp. at 6, and to present factual disputes for resolution in a motion to dismiss. Pl. Opp. at 7. Instead, the Government is asking that the court hold the plaintiffs to the same pleading standard everyone else must meet: plaintiffs must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). And while the Court "must accept as true all factual allegations, and . . . indulge all reasonable inferences in favor of the non-movant, *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted), that does not mean that the Court is forced to accept legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plaintiffs' amended complaint fails this simple test.

As the Government's motion to dismiss explained, a claim of bad faith or abuse of discretion must be pled to "plausibly suggest" the legal standard was met for that claim, and the legal standard is high. *See* Mot. To Dismiss, ECF No. 15 (MTD), at 9. The plaintiffs' allegations do not meet that standard. Rather, they allege two things: (1) a collection of negative public statements made by various Government actors about USAID, generally, which culminated in the decision by the Executive Branch to "dismantle" or change the agency; Amed.

2

Compl. at 21 (¶87) - 26 (¶ 103); and, (2) following those changes to the agency, there was a "mass" termination of PSCs. Amend. Compl. at 26 (¶ 104). As we explain further below, these two sets of allegations leave a chasm between alleged "cause" and "effect" that plaintiffs fail to bridge in their amended complaint. Rather, they tell two stories: one about changes to an agency, which followed a series of accusations by Government officials about the leadership of that agency and the operation of the agency overall. The second story is about a series of contract terminations, which were directed and executed by a different set of people. But the only link between these two stories that the plaintiffs' amended complaint offers is a "closeness in time," see Am. Compl. at 32 (¶ 133). That is not sufficient to meet the legal standard for bad faith or abuse of discretion.

     Second, the Government did not "present factual disputes" in its motion to dismiss, and no such disputes must be resolved for the Court to dismiss the amended complaint. For example, whether changes at USAID are characterized as "dismantling," as the plaintiff suggests, or "reorganization" as the Government described,[1] the plaintiffs have still failed to allege statements made about the *PSC termination decisions* that demonstrate animus. Nor are plaintiffs entitled to an "inference" that "top Government officials" directed the termination of the PSCs in bad faith, as plaintiffs seem to suggest. Pl. Oppn. At 8. To make their claim, plaintiffs would have to allege facts sufficient to claim that the decision to terminate the PSCs was made in bad faith or through the abuse of discretion – and they did not do that.

---

     [1] Though on at least one occasion, plaintiffs argue that "Mr. Marocco (and others) had already started dismantling *and reorganizing* USAID." Pl. Opp. at 31, n. 49.

3

**II.     Plaintiffs Did Not Identify the Appropriate Legal Standard for "Bad Faith" Claims or Sufficiently Allege Bad Faith In the Termination of the PSC Contracts.**

**A. Bad Faith Requires a Specific Intent to Injure or an Animus Towards the Contractor**

Plaintiffs argue that they need not allege a "specific intent to injure" or animus to meet the legal standard for bad faith, relying largely on a passage in *Kalvar Corp., Inc. v. United States*, 543 F.2d 1298 (Ct. Cl. 1976), in which the Court reviews some historical examples. Pl. Oppn. At 10 (citing *Kalvar*, 543 F. 2d at 1302 among other cases). They are mistaken. To the contrary, in *Kalvar* the Court of Claims observed that "the necessary 'irrefragable proof'" required to establish a bad faith claim "has been equated with evidence of *some specific intent to injure the plaintiff*." *Id.* (emphasis added) *Kalvar's* collection of historical cases on bad faith all confirm that interpretation, as they turn on whether there was a specific intention to harm the contractor, in particular. *See, e.g.*, *Librach v. United States*, 147 Ct. Cl. 605, 614 (1959) (finding no bad faith because the officials involved were not "actuated by animus toward the plaintiff,"); *Struck Constr. Co. v. United States*, 96 Ct. Cl. 186, 222 (1942) (discussing a pattern of "oppressive behavior" against the contractor). Indeed, the Federal Circuit has repeatedly echoed that "a challenger seeking to prove that a government official acted in bad faith in the discharge of his or her duties must show a "specific intent to injure the plaintiff" by clear and convincing evidence. *See Rd. & Highway Builders, LLC v. United States*, 702 F.3d 1365, 1369 (Fed. Cir. 2012) (rejecting claims that possible negligence or unreasonable actions were sufficient to establish bad faith). In this case, plaintiffs have failed to allege any facts that show a specific intent to injure the PSC contractors; rather, the negative statements cited in the complaint instead are directed at the agency as a whole and its leadership. *See* Am. Compl. at 24 (¶ 102), 22-23 (¶¶ 95-96).

### B. Plaintiffs Do Not Sufficiently Plead a Claim of "Bad Faith" in the Termination for Convenience of the PSC Contracts

The plaintiffs fail to sufficiently plead a claim of bad faith because (1) they do not allege any specific intent to injure the contractors in particular, (2) the statements on which they base their bad faith claim were made by Government actors not involved in the termination decision, and (3) the allegations against the Government actors who authorized and executed the terminations for convenience are insufficient to plead "bad faith."

First, the only facts alleged in support of bad faith in this case are the public statements critical of USAID quoted in the amended complaint, which include allegations that USAID leadership was "corrupt," "incompetent," or otherwise deficient. But those statements do not reference the PSC contracts or contractors at all. Instead, the plaintiffs alleged that Government officials criticized the agency as a whole, and agency leadership in particular. In other words, the plaintiffs allege that some Government actors publicly criticized other *Government actors* – not government contractors and, specifically, not PSC contractors. *See, e.g.,* Am. Compl. at 22-23 (¶¶ 95-97). Indeed, at one point, the plaintiffs acknowledge that "[a]t no time did the Government seek–-in any way—to identify which PSC contractors were "corrupt," "incompetent," or "insubordinate"; in fact, the plaintiffs did not allege such statements were made against PSC contractors at all. *See* Am. Compl. at 24 (¶ 102). Without an allegation of specific intent to harm or animus toward the PSC contractors, bad faith is not sufficiently pled, the plaintiffs' claim does not meet the legal standard.

Second, the statements on which plaintiffs rely are attributed to Government actors whom plaintiffs do not allege had the legal authority to terminate the PSC contracts and whom, based

5

upon the facts alleged in the complaint, did not in fact do so.[2]  Plaintiffs allege that the PSCs were terminated by contracting officers, and they trace the direction to terminate those contracts to Peter Marocco, Deputy Administrator of USAID.  *See* Am. Compl. Ex. D (ECF No. 11-5) at 2 (February 2, 2025 email from Peter Marocco forwarding an "Action Memo" drafted for Secretary of State Marco Rubio) ("Please immediately execute the comprehensive option of termination of both level of PSC contracts."); *see also* Am. Compl. at 29 (¶¶ 119-120).  They do not plead any evidence of animus from Mr. Marocco or Mr. Rubio in the amended complaint.  *Id.*  While plaintiffs argue in their opposition that Mr. Marocco may have lacked the authority to direct some of the PSC terminations, s*ee* Pl. Opp. at 13, that is a legal conclusion for which they offer no authority and deserve no deference.  *See Ashcroft*, 556 U.S. at 678.  The Court is not required to accept legal conclusions couched as factual allegations (citation omitted), and plaintiffs have offered no factual allegations to sustain bad faith by these decision-makers.

       Third, while plaintiffs take issue with the reasons cited by Mr. Rubio for authorizing PSC terminations, and further suggests they are "post hoc," and "pretextual," the latter are legal conclusions and not factual allegations.  *Id.*  Nor are the reasons cited by Secretary Rubio for his recommendation evidence of "bad faith," even if plaintiffs were to show they resulted from a "fundamental misunderstanding" of USAID operations, as plaintiffs allege.  Am. Compl. at 26 (¶ 108); *see Kalvar*, 543 F.2d at 1303 (rejecting "unwise," "misguided," or "erroneous" Government reasoning as insufficient to show bad faith).

---

[2] Plaintiffs imply that the Department of Government Efficiency (DOGE) played a role in these contract terminations based upon announcements online by the agency of "termination activities," but fall short of alleging that DOGE actually undertook termination actions for PSC contracts in particular, or any USAID contracts, generally.  *See* Am. Compl. at 20 (¶ 85, n. 17).

Nor are plaintiffs' arguments that they need only allege bad faith based upon "the aggregate actions of the Government," rather than each contracting officer or other Government officials directly involved in the administration of a contract, persuasive. *See* Pl. Opp. at 11. In support of this sweeping standard, Plaintiffs cite *Dekatron*, which instead is quite narrow. In *Dekatron*, the Court of Federal Claims found bad faith based upon a contracting officer's failure to remedy the harassing behavior of his contracting officer representative. *Dekatron Corp. v. United States*, 128 Fed. Cl. 115, 118–19 (2016). Holding a contracting officer responsible for his subordinate's actions is hardly commensurate with the "aggregate actions of the Government." *North Star Alaska Hous. Corp.*, persuasive, as the court credited as bad faith a pattern spanning a decade of "quarrelsome" behavior by Government officials, but all of those officials were part of the decision-making tree at the same agency administering a long-term lease. *See N. Star Alaska Hous. Corp. v. United States*, 76 Fed. Cl. 158, 189 (2007). This does not aid plaintiffs' cause because the plaintiffs have not pled any derogatory statements by decision-makers for USAID. Finally, plaintiffs cite *27-35 Jackson Ave. v. United States*, 162 Fed. Cl. 550 (2022)*, aff'd,* 127 F. 4th 1314 (Fed. Cir. 2025), but this is a case in which the Court of Federal claims declined to impute as bad faith one agency's dissatisfaction with its landlord when the lease termination decision was made by another agency. Thus, there is no support for plaintiffs' contention that allegations of "aggregate actions by the Government" are sufficient to form a claim of bad faith.

    **C. The Plaintiffs' Attempt to Reach Beyond the Contracts At Issue to Investigate the Funding And Organization Decisions of the Executive Branch Are Improper**

The plaintiffs argue that the Government seeks to "immunize" the termination decisions from scrutiny by attaching them to "programmatic policy choices or reorganization efforts." Pl. Oppn. At 14. But it is the plaintiff who is seeking to draw political decisions by the Executive Branch about how to allocate foreign aid dollars into a discrete contract dispute. Indeed, the

7

amended complaint is premised on the proposition that "[t]he Government Violated the Law When it Dismantled USAID," Am. Compl. at 21, and that "the terminations of the PSCs were based on" the decision to dismantle the agency.  Am. Compl. at 32 (¶ 131).  But this Court has declined in the past to reach beyond individual contract decisions to inquire about the wisdom of funding determinations.  *See Northrop Grumman Corp. v. United States*, 46 Fed. Cl. 622, 627-628 (2000); *see also Robert F. Simmons & Assocs. v. United States*, 175 Ct. Cl. 510, 516 (1966) (no bad faith in a GSA decision declining to consider the merits of a particular bid, when all bids were cancelled following a change in appropriations for the agency); *Coastal Corp. v. United States*, 6 Cl. Ct. 337, 383-84 (1984) (no bad faith or abuse of discretion in a DOE decision to reject all bids in favor of government facilities in response to changed foreign policy objectives). While plaintiffs argue that *Northrop* is an example of a case where the Court engaged in a factual inquiry about "motive and intent," of a Government termination decision, the Court's examination of the Government's motive in that case was to consider whether the "intent" of the agency decision-maker was to replace Northrop with a competitor.  *See Northrop Grumman Corp.*, 46 Fed. Cl. at 627-628.  It did not inquire about whether NASA was wise to continue to fund the Space Program.  Likewise, there are no allegations in this case to suggest that the PSCs were terminated to replace existing contractors with new people.  Rather, the Government made a decision about funding its foreign aid work, and as a consequence of that funding decision, the agency elected to terminate certain contracts.

In contrast, the broader question about the choice to allocate government funds to certain programs or reorganize an agency is certainly outside this Court's jurisdiction to adjudicate claims on which a contracting officer has issued a decision under the Contracts Disputes Act. *See* 41 U.S.C. §§ 601-13; 28 U.S.C. § 1491(a)(2); *Alliant Techsystems, Inc. v. United States*, 178

F.3d 1260, 1264 (Fed.Cir.1999) (recognizing that the Court's jurisdiction under the CDA is limited to "claim[s] by or against, or dispute with, a contractor arising under section 10(a)(1) of the [CDA], including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under [section 605 of the CDA].). Indeed, though plaintiffs dismiss our citation to *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319 (Fed. Cir. 1999), it tends to support this point. Plaintiffs conflate the actual termination decisions at issue in *McDonnell Douglas* and in this case. In *McDonnell Douglas*, the Navy terminated for default and the question was whether that decision was pretextual or related to performance. But importantly, the court did not question the Navy's overall decision to cancel the program, rather it looked to see whether the contracting officer has a basis for terminating for default. Here the termination decision was for the convenience of the Government, there is an absence of any allegation of bad faith in that decision, and the specific decision to terminate does not render broader political decisions about the funding or the organization of USAID to be within the jurisdiction of the CDA.

### III. Plaintiffs Do Not Sufficiently Plead Abuse of Discretion Because They Cannot Plead Bad Faith

The plaintiffs insist that "abuse of discretion" is properly pled and distinct from "bad faith" as a theory of harm. Pl. Oppn. At 15. They urge the Court to apply the *Keco* standard, which appears to set out four elements to an abuse of discretion claim: (1) the procurement official's bad faith, (2) the reasonableness of the decision, (3) amount of discretion delegated to the procurement official; and (4) violations of an applicable statute or regulation alone may be arbitrary." *See Krygoski Constr. Co., Inc. v. United States*, 94 F.3d 1537, 1543 (Fed. Cir. 1986) (citing *Keco Indus., Inc. v. United States*, 492 F.2d 1200 (Ct. Cl. 1974)). The application of the

9

*Keco* test, however, requires determining at the outset if the procurement official acted in "bad faith," *id.*, which would seem to erase the distinction between bad faith and abuse of discretion standards. Indeed, the Court of Claims acknowledged this overlap in *Kevlar*, confirming that "many of our prior decisions seem implicitly to accept the equivalence of bad faith, abuse of discretion, and gross error." *Kalvar,* 543 F.2d at 1301, n1. Further, the Federal Circuit also recognized that "the procurement official's bad faith" is one of the standards for finding that abuse of discretion is present. *See Krygoski Constr.*, 94 F.3d at 1543 (quotations omitted). Critically, in this case, the plaintiffs have elected not to address the full *Keco* test at all, simply stating that "Plaintiffs address factors two and four in this section," Pl. Oppn. At 16 n. 4, perhaps conceding that they rest on their "bad faith" arguments to meet element number one.

     Regardless, plaintiffs have not actually alleged that the procurement officials who terminated their PSC contracts were acting in bad faith; nor have they effectively alleged that Mr. Marocco or Secretary of State Rubio were acting in bad faith in directing the cancellation of various programs within the agency. The Court is not obliged to defer to the plaintiffs' allegations that Mr. Marocco or Secretary Rubio's stated rationale for the PSC terminations were "pretextual," because the plaintiffs have pled no facts in support of that presumption of intent. Bare allegations are not sufficient to meet this standard. Rather, the Court must "consider[ ] the range of possible interpretations of the defendant's alleged conduct, [and] if the 'more likely explanations' involve lawful, non-actionable behavior, ... should find that the plaintiff's claim is not plausible." *Todd Constr., L.P. v. United States*, 94 Fed. Cl. 100, 115 (2010) (quoting *Iqbal*, 556 U.S. at 681). For these purposes, "allegations that are 'merely consistent with' [a claim] are insufficient." *Id.* In this case, the plaintiffs cite no statement from any contracting officer, Mr.

10

Marocco, or Secretary Rubio that supports the allegation of a pretext, and so fall far short of meeting the high burden to plead abuse of discretion.

Nor does the Executive Branch's decision-making about the fate of USAID establish a violation of law relative to abuse of discretion. Pl. Oppn. At 18. Again, the decision being challenged in this case related to the termination of the PSC contracts, which is distinct from the political decision to reorganized or "dismantle" USAID.

## IV.   The Court Need Not Resolve Class Action To Dismiss Plaintiffs' Complaint

Finally, plaintiffs argue that the Court should resolve the question of class certification based upon the plaintiffs' motion to certify a class rather than the Government's motion to dismiss. Pl. Oppn. at 19-20. We submit that resolving the motion to dismiss should moot any need to consider the plaintiffs motion to certify a class, thus skipping the "unnecessary duplication," plaintiffs urge the court to avoid. *See* Pl. Oppn. at 20; *see Greenlee Cty. v. United States*, 487 F.3d 871, 880 (Fed. Cir. 2007) (citations omitted) (acknowledging that the Federal Circuit has "repeatedly found on appeal that issues related to class certification were moot in light of [its] resolution against the plaintiff of a motion to dismiss or for summary judgment."); *see also* Govt Opp. to MCC at 6-8.

But since plaintiffs proposed in their opposition to the Government's motion to dismiss – after briefing on their motion to certify a class had closed – to amend for a second time their complaint, we address below the relevance of that change. Specifically, by removing Count II (alleging termination for convenience costs were not paid), differences between the plaintiffs' claims for convenience costs are no longer material to the issue of class certification. But there remain real differences in the claims that the representative parties may continue to pursue, and the questions of law or fact across class members. RCFC 23(b)(2)-(3); s*ee, e.g., Cooke v. United States*, 1 Cl. Ct. 695, 699 (1983) (denying class certification because dissimilar factual issues

11

regarding damages failed to meet the typicality requirement); *Christian v. United States*, 46 Fed. Cl. 793, 816 (2000) (partially denying class certification because plaintiff's claims turned in part upon particular career field and skill, and, therefore, typicality criteria was not met).

The plaintiffs argue in their opposition that PSC contracts were terminated at different points in time and potentially for different reasons.  *See* Pl. Oppn. at 13, Am. Compl. at 32 (¶ 133).  This fact is inextricable from plaintiffs' bad faith claims, because they argue that the "closeness in time" between statements made by various Government actors about USAID and the termination decisions is what (if anything) connects statements by other Government officials to the PSC terminations.  *See* Am. Compl. at 32 (¶ 133).  The plaintiffs acknowledge that the termination notices issued for PSCs differed in their characterization of the basis for termination (which plaintiffs call "updated boilerplate language").  *See* Am. Compl. at 31 (¶ 125).  They also allege that termination notices were issued by different contracting officers, and suggest "many" – though not all – were "not issued by the cognizant COs who were responsible for administering and had authority over the respective contracts." *Id.* at ¶ 126.  These differences suggest factual and legal issues that may develop differently across differently-situated PSCs, and cannot be overcome by the largely conclusory allegations with which the named plaintiffs seek to allege class action status.

## CONCLUSION

For the foregoing reasons, we respectfully request that our motion to dismiss be granted, and that the plaintiffs' complaint be dismissed for failure to state a claim on which relief may be granted.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | BRETT A. SHUMATE<br>Assistant Attorney General |
|  | PATRICIA M. McCARTHY<br>Director |
|  | /s/ Martin F. Hockey, Jr.<br>MARTIN F. HOCKEY, JR.<br>Deputy Director |
| OF COUNSEL<br>Rachel B. Cochran<br>Assistant General Counsel<br>U.S. Agency for Int'l Development | /s/ Stephanie A. Fleming<br>STEPHANIE A. FLEMING<br>Trial Attorney<br>Commercial Litigation Branch<br>Civil Division<br>U.S. Department of Justice<br>P.O. Box 480, Ben Franklin Station<br>Washington, DC 20044<br>Telephone: (202) 616-0170<br>Facsimile: (202) 305-2062<br>Stephanie.Fleming@usdoj.gov |
|  | *Attorneys for Defendant* |

Dated: January 20, 2026