# In the United States Court of Federal Claims

No. 25-1241
Filed: April 10, 2026

|  |  |
|---|---|
| **ANDREA DANZIGER, et al.,** | |
| *Plaintiffs,* | |
| **v.** | |
| **THE UNITED STATES,** | |
| *Defendant.* | |

*Stephen J. McBrady*, Crowell & Moring LLP, Washington, DC, with *Charles Baek*, *Sharmistha Das*, *Kenneth Dintzer*, *Eric Herendeen*, Of Counsel, and *Joshua Sohn*, Crowell & Moring LLP, New York, NY, Of Counsel, for Plaintiffs.

*Stephanie A. Flemming*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Martin F. Hockey, Jr.*, Deputy Director, *Patricia M. McCarthy*, Director, and *Brett A. Schumate*, Assistant Attorney General, U.S. Department of Justice, Washington, DC, with *Rachel B. Cochran*, Assistant General Counsel, U.S. Agency for International Development, Of Counsel, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

Putting the cart before the horse, the United States moves to dismiss Plaintiffs' claims for damages arising from their wholesale terminations by the United States Agency for International Development ("USAID"). (Def.'s Mot., ECF No. 15). In short, the United States proposes that the Court grapple with the merits of those claims—an impermissible shortcut. Plaintiffs have properly and plausibly pled their claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The United States' Motion to Dismiss is therefore **DENIED**.

A motion to dismiss for failure to state a claim upon which relief can be granted is governed by RCFC 12(b)(6). This rule requires dismissal when a complaint fails "to state a 'claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (construing analogous Fed. R. Civ. P. 12(b)(6)). At the pleading stage, the plausibility standard does not impose a probability requirement; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support the plaintiff's allegations. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). A claim must be dismissed "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). In evaluating a motion to dismiss, the Court must consider the factual allegations in the complaint as true and

draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). To survive such a motion, the "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (cleaned up).

The United States maintains that Plaintiffs have not alleged "bad faith" or "abuse of discretion" and that Plaintiffs also concede the termination clause costs were paid. (Def.'s Mot. at 8–17).[1] Not so. Plaintiffs' Amended Complaint is replete with allegations implicating "bad faith." (*See generally* Am. Compl. at ¶¶ 80–94, ¶ 95 (quoting Mr. Elon Musk ("Mr. Musk") via X stating: "USAID was a viper's nest of radical-left [M]arxists who hate America[;]" "USAID is a criminal organization. Time for it to die."), ¶ 96, ¶ 97 (citing a news article quoting President Trump stating USAID has "been run by a bunch of radical lunatics, and we're getting them out . . ."), ¶¶ 98–101, ¶ 102 (citing a YouTube video published by the White House: "USAID is really corrupt. I'll tell you. It's corrupt. It's incompetent."), ¶ 106 (noting the concurrent timeline of Personal Services Contract terminations with statements made by Mr. Musk), ¶¶ 107–117, ¶ 118 (alleging that the terminations were ordered by "the DOGE team" at the direction of "the White House, State Department, and Agency Leadership"), ¶¶ 119–137, ECF No. 11). These public statements by various officials may suffice when measured against the metrics of bad faith.[2] That assessment awaits another day. In addition to these specific examples, Plaintiffs' Amended Complaint also sufficiently raises general abuse of discretion claims, further buttressing their breach of contract arguments. (*Id*. at ¶¶ 131–32, 137, 143–44).

Though the United States has certainly made it clear that it *disagrees* with Plaintiffs' claims, this disagreement does not usurp the Court's responsibility to accept as true the allegations in the pleading and "indulge all reasonable inferences in favor of the nonmovant." *Sommers Oil Co.*, 241 F.3d at 1378. "The plausibility standard 'does not impose a *probability* requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence' to support the plaintiff's allegations." *Nalco Co.*, 883 F.3d at 1350 (citing *Twombly*, 550 U.S. at 556 (emphasis added)). The standard to demonstrate bad faith is "'well-nigh irrefragable proof' that the government had a specific intent to injure [the plaintiff]." *Caldwell & Santmyer, Inc. v. Glickman*, 55 F.3d 1578, 1581 (Fed. Cir. 1995) (quoting *Torncello v. United States*, 681 F.2d 756, 770 (Ct. Cl. 1982)). "[T]he necessary irrefragable proof has been equated with evidence of some specific intent to injure the plaintiff . . . ." *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002)

---

[1] In its Motion to Dismiss, the United States also takes the opportunity to argue that Plaintiffs have not sufficiently alleged a class action. (Def.'s Mot. at 18–20). The Court will address all arguments related to Plaintiffs' Motion to Certify Class, (ECF No. 14), in a separate order.

[2] Plaintiffs also raise the question of whether the Department of Government Efficiency ("DOGE")'s involvement in the "dismantling" of USAID at the invitation of the Executive Branch was lawful. This remains an open issue. *Does v. Musk*, No. CV 25-0462-TDC, 2026 WL 295364 (D. Md. Feb. 4, 2026), *mandamus granted by In re Musk*, No. 26-1160, 2026 WL 626965 (4th Cir. Mar. 4, 2026); *see Does 1-26 v. Musk*, 771 F. Supp. 3d 637, 687 (D. Md. 2025).

(quoting *Kalvar Corp. v. United States*, 543 F.2d 1298, 1302 (Ct. Cl. 1976) (cleaned up)); *see also Gadsden v. United States*, 78 F. Supp. 126, 127 (Ct. Cl. 1948) (finding bad faith when actions are "motivated alone by malice."). However, plaintiffs are not required to prove their entire case in their complaint—the requirement is that the claims are *plausible. Iqbal*, 556 U.S. at 678. Nevertheless, the United States argues that because Plaintiffs "have not alleged any personal animus or intent to injure by the contracting officer who terminated their contracts or the agency official under whose policy guidance those decisions were made[,]" their claims must fail.[3] (Def.'s Mot. at 1). That argument misapprehends the limited burden Plaintiffs face at this stage. Proving their entire case is not yet required. *Keeter Trading Co. v. United State*s, 79 Fed. Cl. 243, 265 (2007) (denying a motion for summary judgment because bad faith is an "intensely factual question").

The United States asks this Court for a razor-thin interpretation of the legal standards—barring Plaintiffs from even the chance to assert their claims. (*See* Def.'s Mot. at 10). First, the United States argues that for the Court to have jurisdiction over Plaintiffs' claims, the Plaintiffs must definitively demonstrate bad faith by the contracting officers who terminated their contracts. (*Id.* ("The plaintiffs have neither alleged that the contracting officer terminating their contracts did so with a specific intention to injure them, nor have they alleged that the agency did not intend to honor those contracts at the time they were issued.")). The United States further claims that "even if the Court were to accept the plaintiffs' argument that decisions of the executive branch to reorganize or dismantle USAID were themselves taken in bad faith, that would not translate to bad faith on the part of the contracting officer in terminating the plaintiffs' contracts." (Def.'s Mot. at 12 (citing *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1328–29 (Fed. Cir. 1999) in support of its argument that "[b]oth the Federal Circuit and this court have in the past recognized a difference between a general decision about the fate of a particular program or agency, and the specific contracting officer's decision to terminate a contract.")). Again, the United States misconstrues the legal standard at this early stage, mutating it from a plausibility standard into a probability standard. *See Nalco Co.*, 883 F.3d at 1350.

The United States also argues that Plaintiffs' claims are insufficient because they do not allege bad faith, but rather: "(1) a collection of negative public statements made by various Government actors about USAID, generally, which culminated in the decision by the Executive Branch to 'dismantle' or change the agency; and, (2) following those changes to the agency, there was a 'mass' termination of [Personal Services Contractors]." (Def.'s Reply at 2–3 (citing Am. Compl. at ¶¶ 87–104) (cleaned up), ECF No. 19). This characterization once again ignores the legal standard at this stage—the Court *must* consider the factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Sommers Oil Co.*, 241 F.3d at 1378 (citations omitted). The Court finds that Plaintiffs' allegations, taken as true and viewed with all reasonable inferences in their favor, are sufficient to meet their burden at this stage.

---

[3] If the United States' position is that governmental misconduct is immunized when a contracting officer acts pursuant to directives from higher-ranking officials, the Court rejects that peculiar notion. (*See* Def.'s Mot. at 1).

Finally, the United States argues that Plaintiffs have not sufficiently alleged that USAID breached the termination clause of their contracts because certain costs due under that clause have been paid. (Def.'s Mot. at 13–17). Plaintiffs' contracts provide the following:

> Upon such a termination [for convenience], contractor's right to compensation shall cease when the period specified in such notice expires except that the contractor shall be entitled to any unused vacation leave, return transportation costs and travel allowances and transportation of unaccompanied baggage costs at the rate specified in the contract and subject to the limitations which apply to authorized travel status.

(Am. Compl. at ¶ 21; *see id*. Exs. M at 42, N at 39, O at 30, P at 40). This reasoning is circular. Simply because USAID may have paid out certain costs due under the termination for convenience clauses of Plaintiffs' contracts does not mean that the clauses themselves have not been breached. When the United States improperly terminates a contract and thereby breaches it, the contractor is entitled to termination costs and breach-of-contract damages. *See Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 114 Fed. Cl. 258, 390 (2013) (quoting *Krygoski Const. Co. v. United States*, 94 F.3d 1537, 1541, 1545 (Fed. Cir. 1996) ("Although a termination for convenience generally does not entitle a contractor to anticipatory profits, a termination for convenience 'tainted by bad faith or an abuse of contracting discretion . . .' may entitle a plaintiff to expectancy damages.")); *Bowles v. United States*, 144 Fed. Cl. 240, 253 (2019) (awarding the balance of the contract value for an improper termination). Moreover, whether Plaintiffs have been paid all sums to which they are entitled awaits proof rather than the bare assertions of the United States.

Having determined that Plaintiffs have adequately met their burden at the pleading stage, the United States' Motion to Dismiss, (ECF No. 15), is **DENIED**. Pursuant to RCFC 12(a)(4)(A)(i), the United States shall file its responsive pleading within **fourteen days**, on or by **Friday, April 24, 2026**.

**IT IS SO ORDERED.**



s/      David A. Tapp      
DAVID A. TAPP, Judge