**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

ANDREA DANZINGER, *on behalf of herself and all similarly situated*,

*Plaintiffs*,

v.

UNITED STATES OF AMERICA,

*Defendant*.

Case No. 25-cv-1241-DAT

Hon. David A. Tapp

**NOTICE OF INDIRECTLY RELATED CASE**

Pursuant to Rule 40.2(b) of the Rules of the U.S. Court of Federal Claims, Plaintiffs in *HIAS v. United States*, No. 26-cv-429-MHS (Fed. Cl.), hereby notify the Court that *HIAS* is indirectly related to an earlier-filed case, *Danzinger v. United States*, No. 25-cv-1241-DAT (Fed. Cl.). The two cases involve common issues of fact arising out of the mass termination of funding instruments by the United States Agency for International Development (USAID) between February and April 2025. *See* RCFC 40.2(b)(2)(A). The allegations involve the same officials engaging in the same course of conduct in terminating awards *en masse*, for the same reasons, over the same time period. And consolidation for purposes of coordinated discovery will likely significantly promote the efficient administration of justice because both cases will involve many of the same documents, custodians, deposition topics, and deponents, and will likely raise identical or overlapping questions concerning privilege over particular documents and the scope of discovery. *See* RCFC 40.2(b)(2)(B).

Plaintiffs' counsel in *HIAS* had been unaware of the *Danzinger* case until last week; the *HIAS* Plaintiffs are thus filing this Notice of Indirectly Related Case as soon as possible after learning

about the case and its relatedness. The *HIAS* Plaintiffs respectfully submit that it would be appropriate under Rule 40.2(b)(4) for the Court to transfer *HIAS* to Judge Tapp for consolidation with *Danzinger*, or, at a minimum, to consolidate the cases for the limited purposes of discovery.[1]

## BACKGROUND

**1.** The earlier-filed case is *Danzinger v. United States*, No. 25-cv-1241-DAT (Fed. Cl.), which concerns the government's "mass, indiscriminate terminations" of Personal Service Contracts ("PSCs") entered into by USAID. Compl. ¶ 33, *Danzinger v. United States*, No. 25-cv-1241-DAT (Fed. Cl. July 28, 2025), ECF No. 1 ("*Danzinger* Compl."). The Named Plaintiff, Andrea Danzinger, is a former Personal Service Contractor ("PSC contractor") who was terminated as part of these mass terminations. *See id.* ¶¶ 13–22. She brought suit on behalf of herself and other similarly situated PSC contractors. *Id.* ¶¶ 5–12.

The *Danzinger* Complaint alleges that, between February 12 and April 24, 2025, USAID and State Department officials ordered the mass termination of hundreds of PSC contractors at the direction of, or in coordination with, the U.S. DOGE Service (also known as the Department of Government Efficiency or DOGE) and DOGE's then-*de facto* head, Elon Musk. *See id.* at ¶¶ 5, 50–66. In particular, the Complaint alleges that "DOGE implemented many termination and wind-down actions across agencies, including terminating employees and contractors, canceling Government grants and contracts, and terminating leases." *Id.* ¶ 44. The Complaint quotes several statements by Elon Musk concerning his involvement in Trump Administration's decision to "shut down" USAID, including his assertion that "USAID is a criminal organization"

[1] Undersigned counsel requested the government's position on this filing. The government does not agree that the cases are indirectly related.

and that it is "[t]ime for it to die," as well as false statements concerning the supposed misuse of USAID funds, to justify the government's actions. *Id.* ¶ 58; *see also id.* ¶¶ 59, 62.

The *Danzinger* Complaint alleges numerous other irregularities in the PSC terminations issued by USAID. For example, the Complaint alleges that USAID issued "boilerplate termination letters," which were not signed or issued by the cognizant contracting officer and which did not reflect any individualized determinations by contracting officers and other government personnel. *Id.* ¶¶ 71–74. The Complaint alleges that the named plaintiff received multiple termination notices, including a later notice "which revised the termination date." *Id.* ¶¶ 16, 19. And the Complaint quotes statements by the Secretary of State and then-Deputy Administrator Peter Marocco purporting to justify the terminations on grounds that the cancelled contracts "spent tens of billions of dollars in ways that did not serve, (and in some cases even harmed), the core national interests of the United States." *Id.* ¶ 76; *see id.* ¶¶ 64, 69–70, 75–78.

Based on these factual allegations, the *Danzinger* Complaint alleges that these mass terminations were "improper and breached the PSC [contractors'] contracts" because they were based on "an abuse of discretion and bad faith towards the [PSC contractors]." *Id.* ¶ 79.

**2.** The later-filed case is *HIAS v. United States*, No. 26-cv-429-MHS (Fed. Cl.), which concerns the government's "mass, indiscriminate waves of terminations" of USAID and State Department grants and cooperative agreements. Compl. ¶ 72, *HIAS v. United States*, No. 26-cv-429-MHS (Fed. Cl. Mar. 17, 2026), ECF No. 1 ("*HIAS* Compl."). The *HIAS* Plaintiffs allege that the government terminated their USAID and State Department agreements as part of broader mass terminations, without any individualized review, in breach of the terms of their agreements. *See id.* ¶¶ 4, 9–16, 46–96.

Like the *Danzinger* Complaint, the *HIAS* Complaint alleges that, from February to April 2025, USAID and State Department officials ordered the mass termination of thousands of grants and cooperative agreements (including Plaintiffs' awards) at the direction of, or in coordination with, DOGE and Elon Musk. *Id.* ¶ 3, 40–46. In particular, the Complaint alleges that "DOGE teams were embedded within USAID and the State Department 'to implement the President's DOGE Agenda'" (*id.* ¶ 41) and that grants and agreements officers were "instructed by DOGE" to suspend and terminate awards *en masse*, without any individualized review (*id.* ¶ 66; *see id.* ¶¶ 46–79). The Complaint quotes several statements by Elon Musk, including his assertion that it is "[t]ime for [USAID] to die," as well as false statements concerning the supposed misuse of USAID funds, which were made to justify the government's actions. *Id.* ¶ 42; *see id.* ¶¶ 42–45.

The *HIAS* Complaint also identifies the same or similar irregularities in the award terminations in the *Danzinger* Complaint. For example, the *HIAS* Complaint alleges that USAID and the State Department issued "boilerplate termination letters," which were often not signed or issued by the cognizant grants or agreement officer and which did not reflect any individualized determinations by grants or agreement officers and other government personnel. *Id.* ¶¶ 106, 116; *see id.* ¶¶ 3–4 (similar); *id.* ¶¶ 47, 49, 57, 68, 72, 84–85 (examples of form letters). The Complaint alleges that, in its haste to cancel awards as fast as possible, the government sometimes communicated award terminations to the wrong organizations or sent multiple letters with inconsistent effective dates. *See, e.g.*, *id.* ¶¶ 90, 139 n.1. And the Complaint disputes the government's assertions that the Secretary of State and then-Acting Deputy Administrator Peter Marocco individually reviewed all award terminations. *Id.* ¶ 73–78. Such an individualized review by high-ranking officials is implausible in light of the number and complexity of the awards terminated over such a short time period. *Id.*

Based on these factual allegations, the *HIAS* Complaint claims that USAID and the State Department breached Plaintiffs' award agreements with the federal government, including by abusing their discretion and breaching the implied covenant of good faith and fair dealing. *Id.* ¶¶ 186–204.

**3.** On April 10, 2026, Judge Tapp denied the government's motion to dismiss in *Danzinger*, holding that Plaintiffs had alleged facts supporting a plausible inference that the government had abused its discretion and acted in bad faith in terminating PSC contractors *en masse*. *See* Mem. Op. & Order 2–3, *Danzinger v. United States*, No. 25-cv-1241-DAT (Fed. Cls. Apr. 10, 2026), ECF No. 20.

The government's answer in *Danzinger* is due April 24, 2026. The government's answer or motion to dismiss in *HIAS* is due May 18, 2026.

## LEGAL STANDARD

Rule 40.2(b)(1) of the Rules of the U.S. Court of Federal Claims provides: "If a party is aware of the existence of any indirectly related case(s), the party may file a Notice of Indirectly Related Case(s)."[2] Cases are "indirectly related" when "they present common issues of fact" and "their consolidation for purposes of coordinated discovery can be expected significantly to promote the efficient administration of justice." RCFC 40.2(b)(2)(A)–(B). "When a Notice of Indirectly Related Case(s) is filed, the judge in the earliest-filed case will call a meeting of all of the assigned judges to determine what action, if any, is appropriate." RCFC 40.2(b)(4).

[2] There is no time limit for filing a Notice of Indirectly Related Case. Plaintiffs' counsel in *HIAS* were not made aware of the *Danzinger* case until last week; the *HIAS* Plaintiffs are thus filing this Notice at their earliest opportunity after learning of the case and its relatedness.

## DISCUSSION

Plaintiffs in *HIAS* respectfully submit that *Danzinger* and *HIAS* would be appropriately treated as indirectly related cases under Rule 40.2(b), including because the cases present common issues of fact and because discovery is likely to entail identical or overlapping document requests, custodians, deposition topics, deponents, and evidentiary issues.

**1.** *Danzinger* and *HIAS* "present common issues of fact." RCFC 40.2(b)(2)(A). Both cases arise from the same alleged course of conduct: a centralized effort by senior Executive Branch and DOGE officials to terminate nearly all of USAID's funding agreements over the same time period, between February and April 2025. And both cases plead the same alleged mechanism for carrying out the terminations during this time period: mass action, top-down decisionmaking, boilerplate termination letters, and the absence of any individualized review. Indeed, the allegations are highly similar on a granular level. Both complaints allege that, *inter alia*: (1) USAID issued "boilerplate termination letters" lacking any individualized explanation or consideration for the terminated awardee, *compare Danzinger* Compl. at 2, ¶¶ 72–73 *with HIAS* Compl. ¶¶ 3–4, 106, 116; (2) the relevant contracting, agreements, and grants officers were cut out of the decisionmaking process and exercised no discretion in issuing the termination letters, *compare Danzinger* Compl. at 2, ¶ 82 *with HIAS* Compl. ¶¶ 3, 66, 167–68, 174, 191–92; (3) Elon Musk and DOGE were the driving forces behind this mass-termination process, and they acted based on irrational and unsubstantiated considerations, *compare Danzinger* Compl. ¶¶ 58–65 *with HIAS* Compl. ¶¶ 41–46, 66; and (4) the post-hoc justifications provided by senior USAID and State Department officials were pretextual and not accurate representations of the process that had occurred, *compare Danzinger* Compl. ¶¶ 75–85 *with HIAS* Compl. ¶¶ 73–78.

Accordingly, both cases squarely place at issue the same core factual questions: *who* directed the mass terminations of the agencies' awards; *what process* was used to make termination decisions; *what information* decisionmakers considered; and *what reasons* formed the basis for the terminations.

**2.** "[C]onsolidation for purposes of coordinated discovery can be expected significantly to promote the efficient administration of justice." RCFC 40.2(b)(2)(B). The central factual disputes in *Danzinger* and *HIAS* will require discovery from the same agencies, the same current and former officials, and the same repositories of information, all with respect to a common course of action to eliminate USAID's funding instruments over the same time period.

As such, discovery in the two cases is likely to involve largely overlapping sets of documents, including the same emails from specific USAID, State Department, and DOGE custodians; the same agency action memoranda, and the same termination tranche lists and spreadsheets. Coordinated discovery would therefore avoid duplicative document requests, duplicative collection and review, and duplicative litigation over the same custodians, search terms, privilege assertions, and agency record systems. With respect to privilege assertions in particular, it would be inefficient to have two different judges resolve the same privilege assertions over the same documents.

Similarly, coordinated discovery would prevent duplicative deposition disputes, including disputes over which current or former official may be deposed and the scope of their depositions. Such disputes are likely because both cases center on allegations regarding senior government officials, including the Secretary of State, Elon Musk, Peter Marocco, and Jeremy Lewin. *Compare Danzinger* Compl. ¶¶ 4, 56 & n.20; *with HIAS* Compl. ¶¶ 41–45, 56, 69, 77. It is likely that the government will resist depositions from these officials, and it would be inefficient—and

potentially lead to inconsistent rulings—to have two different judges resolve the propriety of depositions of these officials regarding the same course of conduct.

Finally, the fact that Judge Tapp recently denied the government's motion to dismiss in *Danzinger* does not make coordination inefficient. The government's answer in *Danzinger* is due April 24, 2026, whereas the government's answer or motion in *HIAS* is due May 18, 2026. So, the cases remain close enough in procedural posture that consolidating cases for pretrial proceedings would still avoid duplication. Even if the government decides to file a motion to dismiss in *HIAS*, that motion is likely to present substantially overlapping pleading-stage issues that can be resolved promptly in light of Judge Tapp's recent analysis in *Danzinger*, without materially delaying coordination of the common discovery that both cases will require.

## CONCLUSION

Plaintiffs in *HIAS* respectfully submit that it would be appropriate under Rule 40.2(b)(4) for the Court to transfer *HIAS v. United States*, No. 26-cv-429-MHS (Fed. Cl.), to Judge Tapp for consolidation with *Danzinger v. United States*, No. 25-cv-1241-DAT (Fed. Cl.), or, at a minimum, to consolidate the cases for the limited purposes of discovery.

Dated: April 22, 2026

Respectfully submitted,

*/s/ Daniel F. Jacobson*

Daniel F. Jacobson (D.C. Bar # 1016621)
Stephen K. Wirth (D.C. Bar # 1034038)
Brian C. Rosen-Shaud (D.C. Bar # 90042065)
Kyla M. Snow (D.C. Bar # 90036400)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave. NW, Suite 301
Washington, DC 20016
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

*Counsel for Plaintiffs in HIAS v. United States, No. 26-cv-429-MHS*