# In the United States Court of Federal Claims

No. 25-1241
Filed: May 7, 2026

|  |
|---|
| **ANDREA DANZIGER, et al.,** <br><br> *Plaintiffs*, <br><br> **v.** <br><br> **THE UNITED STATES,** <br><br> *Defendant*. |

*Stephen J. McBrady*, with *Charles Baek*, *Sharmistha Das*, *Kenneth Dintzer*, *Eric Herendeen*, and *Joshua Sohn*, Of Counsel, Crowell & Moring LLP, Washington, DC, for Plaintiffs.

*Stephanie A. Flemming*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Martin F. Hockey, Jr.*, Deputy Director, *Patricia M. McCarthy*, Director, and *Brett A. Schumate*, Assistant Attorney General, U.S. Department of Justice, Washington, DC, with *Rachel B. Cochran*, Assistant General Counsel, U.S. Agency for International Development, Of Counsel, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

The narrow issue here is not whether Plaintiffs were wronged, but whether, if they were wronged, they were wronged together. Before the Court is Plaintiffs' Motion for Class Certification pursuant to RCFC 23.[1] (Pls.' Mot., ECF No. 14). The Court finds that class certification is warranted. The proposed class satisfies each prerequisite, and Plaintiffs have demonstrated both that common questions of law and fact predominate and that a class action constitutes the superior method of adjudication. Plaintiffs' Motion is therefore **GRANTED**.

---

[1] Plaintiffs filed a "Motion for Class Action Certification" and a "Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Class Action Certification" combined as one document with nonconsecutive page numbers. (*See* ECF No. 14). The Court will use "Plaintiffs' Motion" or "Pls.' Mot." in reference to the entire filing for consistency.

## I.    Background

Plaintiffs seek to certify a class involving more than one thousand Personal Services Contracts ("PSCs") with the United States Agency for International Development ("USAID" or "Agency") terminated between February and April 2025. (Pls.' Mot. at 1). PSC contractors worked to further USAID's mission to "promote and demonstrate democratic values abroad, and advance a free, peaceful, and prosperous world[.]"[2] The physical locations of PSC contractors and the places they worked were dispersed geographically. For example, Named Plaintiff Andrea Danziger ("Ms. Danziger") was based in the United States but worked in Syria and Ukraine, (Pls.' Mot. Ex. 1 at ¶ 13 (Decl. of Andrea Danziger), ECF No. 14-1), and Named Plaintiff Kenneth Sklaw ("Mr. Sklaw") was based in Washington, D.C. but supported work in Kazakhstan, Burma, Papua New Guinea, Sierra Leone, Nigeria, and Vietnam. (Pls.' Mot. Ex. 4 at ¶¶ 5–6 (Declaration of Kenneth Sklaw), ECF No. 14-4). PSC contractors like Ms. Danziger and Mr. Sklaw had many job functions like "building contextual knowledge by monitoring humanitarian issues in assigned countries," "tracking emerging disasters[,]" and "managing, administering, and tracking emergency, early recovery, risk-reduction, and or/resilience-related grants and awards." (Pls.' Mot. at 7 (citing Ex. 1 at ¶ 15)). According to Plaintiffs, their contracts were unlawfully terminated via mass Termination Notices as part of the illegal dismantling of the Agency. (*Id.* at 1–5; *see also* Order Denying Mot. to Dismiss at 2 (outlining Plaintiffs' substantive claims), ECF No. 20).

Plaintiffs now seek to certify the following class: "personal services contractors who performed work for the [USAID] and whose contracts were summarily terminated by the United States between February 12, 2025 and April 24, 2025." (Pls.' Mot. at 1). The United States objects, arguing that "plaintiffs are not entitled to class certification because their claims should instead be efficiently resolved under the Government's motion to dismiss" or alternatively, that "plaintiffs have failed to meet their burden" on the "numerosity, commonality, typicality, [and] superiority" components of class certification. (Def.'s Resp. at 1, ECF No. 16). The United States' arguments as they relate to the propriety of resolution under their Motion to Dismiss are moot. (*See* Order Denying Mot. to Dismiss at 1, 4). The Court will address the United States' arguments related to the fundamental requirements of class certification.

## II.    Analysis

### A.  Standard of Review

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–701 (1979)). This Court may certify a class action if:

---

[2] Department of State and USAID, *USAID's Mission*, https://trumpadministration.archives.performance.gov/state [https://perma.cc/ELH6-2D6R] (last visited May 7, 2026).

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a). Certification also requires that "the United States has acted or refused to act on grounds generally applicable to the class[,]" that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." RCFC 23(b). These requirements have been distilled into five categories: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; and (5) superiority. *Common Ground Healthcare Coop. v. United States*, 137 Fed. Cl. 630, 637 (2018); *Toscano v. United States*, 98 Fed. Cl. 152, 155 (2011).

The plaintiff bears the burden of establishing each requirement. *Oztimurlenk v. United States*, 162 Fed. Cl. 658, 673 (2022); *Barnes v. United States*, 68 Fed. Cl. 492, 494 (2005) ("These requirements are in the conjunctive; hence, a failure to satisfy any one of them is fatal to class certification."); *Fisher v. United States*, 69 Fed. Cl. 193, 197 (2006). "The court may certify a class only if, 'after a rigorous analysis,' it finds that the requirements of RCFC 23 have been met." *Common Ground Healthcare*, 137 Fed. Cl. at 637 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Dukes*, 564 U.S. at 351 (quoting *Falcon*, 457 U.S. at 160) (citation modified); *see also Christopher Village, LP v. United States*, 50 Fed. Cl. 635, 642 (2001) (The Court must "make the factual and legal inquiries necessary to ensure that class certification is appropriate" and "c[an] not accept the plaintiff's assertion[s] as conclusive[.]") (citation omitted). The Court will address each of these elements in turn.

### B. Class is so Numerous that Joinder of All Members is Impracticable (Numerosity)

Joinder of all members of this proposed class is impracticable. *In re Upstream Addicks & Barker (Texas) Flood-Control Reservoirs*, 157 Fed. Cl. 189, 197 (2021), *aff'd sub nom., Ablan v. United States*, 162 F.4th 1364 (Fed. Cir. 2025). "Several factors determine numerosity, including but not limited to: 'the number of class members, the location of the members of the proposed class, the size of the individual claims, and the nature of the action.'" *Rasmuson v. United States*, 91 Fed. Cl. 204, 215 (2010) (quoting *King v. United States*, 84 Fed. Cl. 120, 123–24 (2008)); *see also Filosa v. United States*, 70 Fed. Cl. 609, 615 (2006) (certifying a class action when Plaintiffs were dispersed throughout twelve states).

The United States argues that numerosity considerations "are virtually irrelevant to class certifications in this Court." (Def.'s Resp. at 8 (citing *Oztimurlenk*, 162 Fed. Cl. at 675)). Specifically, the United States claims that because the Court of Federal Claims only authorizes opt-in class actions (rather than automatic inclusion), class certification offers no greater benefit

3

to these plaintiffs than permissive joinder. (*Id.*). The United States also claims that "the number of potential class members is not a good reason to certify a class" in this Court, and the plaintiffs have not offered sufficient argument *or* evidence to satisfy this component of class certification. (*Id.* at 9–10).

If ever a group of plaintiffs satisfied the numerosity requirement, it is this one. First, "the sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004); *see also DeMons v. United States*, 119 Fed. Cl. 345, 354 (2014) (finding a potential class "in excess of 1,000 members . . . is sufficient to satisfy the numerosity requirement."). Here the proposed class consists of approximately 1,200 PSC contractors. (Pls.' Mot. at 23). Second, this Court examines whether "all members of the class are from the same geographic area," if "class members are easily identifiable," and the size of the proposed class to determine whether joinder is more practicable. *Jaynes v. United States*, 69 Fed. Cl. 450, 454–55 (2006) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 131–32 (1st Cir. 1985)); *see also King*, 84 Fed. Cl. at 124–25 ("If plaintiffs are dispersed geographically, then a court is more likely to certify a class action."). The proposed class members "currently live in at least forty states plus the District of Columbia as well as twenty-five countries outside of the United States." (Pls.' Mot. at 23 (citing Pls.' Mot. Ex. 5, ¶ 10 (Decl. of Stephen McBrady), ECF No. 14-5)). Furthermore, the potential recovery value of each PSC contractor's claim does not make retaining counsel financially feasible for each class member due to the cost of counsel in relation to the amount of their claims. (Pls.' Mot. 23–24). All components of numerosity are met.

### C.  Common Questions of Law and Fact (Commonality)

Plaintiffs have also demonstrated commonality, which is satisfied when "the United States has acted or refused to act on grounds generally applicable to the class," and questions of law or fact "common to class members predominate over any questions affecting only individual members." *See In re Upstream Addicks & Barker*, 157 Fed. Cl. at 198 (quoting RCFC 23(a)(2), (b)(1)-(3)). Plaintiffs must demonstrate that "there is at least 'one core common legal question that is likely to have one common defense.'" *King*, 84 Fed. Cl. at 125 (quoting *Fisher*, 69 Fed. Cl. at 199). Notably, "[i]ndividual class members need not be identically situated to warrant a finding of commonality; rather, to meet RCFC 23(a)(2), the questions underlying the claims of the class merely must share essential characteristics, so that their resolution will advance the overall case." *In re Upstream Addicks & Barker*, 157 Fed. Cl. at 198 (quoting *Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 788 (2011)) (internal quotation marks omitted). The threshold of showing commonality "is not high." *King*, 84 Fed. Cl. at 125 (quoting *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986).

The United States argues that Plaintiffs fail to satisfy the commonality requirement "[b]ecause [p]roof of [b]reach of [e]ach [p]otential [p]laintiff's [c]ontract [r]equires an [i]ndividualized [f]actual [a]nalysis." (Def.'s Resp. at 11). The United States would have this Court adjudicate each of these plaintiff's claims on a contract-by-contract basis due to "differences in duties, contractor location, service location, levels of compensation, eligibility for reimbursement of different costs, differentials or allowances; leave entitlement, and eligibility for travel costs." (*Id.* at 14). This kind of factual variance between plaintiffs is "inconsequential." *Adams v. United States*, 93 Fed. Cl. 563, 576 (2010) ("[o]ther factual differences such as

4

different job duties, different leave schedules, and different places of employment, are 'inconsequential.'" (quoting *Barnes*, 68 Fed. Cl. at 498)). To bar certification on this basis would be to impose a uniformity requirement that Rule 23 does not contemplate, and would render class certification unavailable in most cases. *See Crawley v. United States*, No. 18-1804C, 2021 WL 252838, at *10 (Fed. Cl. Jan. 25, 2021) (citing *Barnes*, 68 Fed. Cl. at 499–500 ("Were such [individualized damage determinations] determinative, there scarcely would be a case that would qualify for class status in this court or any other[.]")).

There are common questions of law and fact underlying the claims of the proposed class that meet the requirements set forth in RCFC 23(b)(1). Foundationally, the Court must consider whether USAID abused its discretion and/or acted in bad faith when it terminated the Plaintiffs' contracts. (Pls.' Mot. at 25); RCFC 23(b)(2) (requiring that the United States must have "acted or refused to act on grounds generally applicable to the class[.]"). In doing so, the Court may also reach the common question of termination costs—a question rooted in the same set of operative facts and law for each Plaintiff. (*See* Pls.' Mot. at 25). The commonality requirement is readily satisfied here. Plaintiffs have not only raised common questions but have also demonstrated that proceeding as a class will "generate common answers apt to drive the resolution of the litigation[,]" satisfying Rule 23. *See Dukes*, 564 U.S. at 350 (citation omitted).

### D. Claims and Defenses of Representative Parties are Typical of the Claims and Defenses of the Class (Typicality)

In a class action, "[t]ypicality is demonstrated 'when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Gross v. United States*, 106 Fed. Cl. 369, 381 (2012) (quoting *Barnes*, 68 Fed. Cl. at 498) (internal quotation marks omitted). The United States makes an argument here that is substantively identical to its arguments against commonality: that the bad faith claims (and associated cost claims) are too individualized to meet the typicality requirement. (Def.'s Resp. at 16–17). The Court has rejected this argument. The United States provides no basis for a different result here. The Plaintiffs have effectively shown that the named Plaintiffs assert the same legal claims as the proposed class. (Pls.' Mot. at 2, 27). All Plaintiffs were contractors for USAID, and they all had PSCs terminated between February 12, 2025 and April 24, 2025 using the same alleged improper termination method. (*Id.* at 27); *see In re Upstream Addicks & Barker*, 157 Fed. Cl. at 199 (quoting RCFC 23(a)(3)). No further analysis is needed to find that Plaintiffs have satisfied the typicality requirement.

### E. Named Plaintiff and Counsel are Adequate to Represent the Proposed Class (Adequacy and Superiority)

Finally, the Court must "consider the adequacy of class counsel and . . . ensure that class members do not 'have interests that are antagonistic to one another.'" *King*, 84 Fed. Cl. at 127 (quoting *Barnes*, 68 Fed. Cl. at 499) (internal quotation marks omitted). Counsel's significant experience with complex litigation and class actions is not disputed, (Def.'s Resp. at 17), and the Court finds that counsel is more than adequate under RCFC 23(g), (*see* Pls.' Mot. at 28 (quoting Pls.' Mot. Ex. 5 at ¶ 4 ("The undersigned counsel specialize in claims under the CDA and the Tucker [A]ct and have a combined total of over three decades of experience litigating before this Court.")). However, the United States *does* contend that Plaintiffs have failed to show "that class

5

members do not have any conflicts of interest, because plaintiffs' claims require an individualized analysis of each breach claim." (Def.'s Resp. at 17). The United States argues that, therefore, Plaintiffs cannot show that their interests are aligned with the class, and they fail the adequacy requirement. (*Id.*). The Court disagrees.

The United States' individualization arguments have been largely addressed above. The named Plaintiffs share the same legal claims as the members of the proposed class, based on the same body of facts.[3] *See Starr Int'l Co., Inc. v. United States*, 109 Fed. Cl. 628 (2013) (finding the named plaintiff adequately represented the class interests because "the named plaintiff, and the proposed class members 'are aligned because all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment, arising out of the same government actions[.]'" (quoting *Haggart*, 89 Fed. Cl. at 535)). The Court is satisfied that these shared characteristics are sufficient to ensure that no conflicts of interest exist between class members. The superiority requirement is therefore fulfilled.

### III.    Conclusion

A class action is the superior method for adjudicating this controversy. *See* RCFC 23(b)(3). Plaintiffs state that "[t]reatment as a class action will permit many similarly situated PSC contractors to adjudicate their common claims in a single forum simultaneously and efficiently, and without the duplication of effort and expense that would result from repetitive litigation or numerous, separate individual actions." (Pls.' Mot. at 32); *see Fisher*, 163 Fed. Cl. at 188 (quoting RCFC 23(b)(3)) (Courts consider the superiority of a class action over other forms of litigation by examining: "the class members' interests in individually controlling the prosecution of separate actions; the extent and nature of any litigation concerning the controversy already begun by class members; and the likely difficulties in managing a class

---

[3] Specifically, all Named Plaintiffs:

> Contracted with USAID as PSC contractors, (*see* Pls.' Mot. Ex. 1 at ¶ 5; Ex. 2 at ¶ 4; Ex. 3 at ¶ 7; Ex. 4 at ¶ 4); received rote termination notices between February 12, 2025 and April 15, 2025, (Pls.' Ex. 1 at ¶ 16; Ex. 2 at ¶ 8; Ex. 3 at ¶ 12; Ex. 4 at ¶ 9); submitted CDA claims asserting that the Government breached their PSCs by improperly terminating the PSCs and seek certain termination costs to which they are entitled, (*see* ECF Nos. 11-7, 11-9, 11-11, 11-13); have not been compensated by the Government for the full amount of damages to which they are entitled, (*see* Pls.' Ex. 1 at ¶ 21; Ex. 2 at ¶ 13; Ex. 3 at ¶ 15; Ex. 4 at ¶ 13); and can represent, without conflict, all PSC contractors who have filed CDA claims similarly seeking breach of contract damages and termination costs.

(Pls.' Mot. at 30) (citation modified).

action.") (internal quotation marks omitted).[4] This Court agrees. Plaintiffs have satisfied all five requirements to certify the class, and the United States' arguments to the contrary fall short. Therefore, Plaintiffs' Motion for Class Action Certification, (ECF No. 14), is **GRANTED** and the Court hereby certifies the following class:

> All personal services contractors that were performing work for USAID pursuant to Personal Services Contracts at the time their contracts were terminated by USAID via Termination Notices issued between February 12, 2025, and April 24, 2025.

Pursuant to RCFC 23(g), and for the reasons discussed in Section E, the Court hereby appoints Stephen J. McBrady of Crowell & Moring, LLP as class counsel.

The Court **ORDERS** that Named Plaintiffs Andrea Danziger, Deborah Murphy, Mark Herzberg, and Kenneth Sklaw shall serve as class representatives. The parties shall file a joint proposed notice for purposes of RCFC 12(c)(2)(B) within **thirty days** of the filing of this Order.

**IT IS SO ORDERED.**



s/     David A. Tapp
DAVID A. TAPP, Judge

---

[4] Plaintiffs also represent that:

> The class is also manageable. Undersigned counsel has already put in place an efficient process to: (1) communicate with each proposed class member as well as communicate with the entire group of proposed class members; (2) exchange documents and other important information over a secured portal; and (3) prepare and submit certified claims on behalf of each proposed class member. Indeed, undersigned counsel has already prepared such claims on behalf of 91 PSC contractors, with 287 more to be submitted in the near term.

(Pls.' Mot. at 32).